**UNITED STATES of America**
v.
**Robert B. BAKER, Appellant.**
**No. 13544.**

United States Court of Appeals
Third Circuit.

Argued June 8, 1961.

Decided July 14, 1961.

Rehearing Denied Aug. 9, 1961.

Harold Gondelman, Pittsburgh, Pa., (M. Barney Cohen, Pittsburgh, Pa., on the brief), for appellant.

John R. Gavin, Pittsburgh, Pa. (Hubert I. Teitelbaum, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and HASTIE and FORMAN, Circuit Judges.

HASTIE, Circuit Judge.

Appellant Baker, an organizer for the International Brotherhood of Teamsters, has been convicted of unlawfully receiving money from an employer in violation of Section 302(b) of the Labor Management Relations Act of 1947, 61 Stat. 157, 29 U.S.C.A. § 186(b). The alleged offenses occurred in 1957 and 1958, before the 1959 amendment of Section 302(b), 73 Stat. 537, 29 U.S.C.A. § 186(b).

With exceptions not relevant here, the statute makes it unlawful "for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value". The indictment charged that on three occasions Baker, acting as a representative of employees of Exhibitors Service Co., unlawfully accepted money from the president of the corporate employer. Each of the three payments was the subject of a separate count of the indictment. Baker was convicted on all three counts. This appeal followed.

Appellant's first point is that, on the evidence, the jury could not reasonably have concluded that the payments were anything other than loans, which he says were not prohibited by the statute. The trial judge clearly instructed the jury that acceptance of money as a loan would not violate the Act. Thus, the verdict expresses the jury's conclusion that these payments were not loans. We shall demonstrate this was a permissible conclu-

sion on the evidence. It is, therefore, unnecessary to decide whether the court's interpretation of the statute as not prohibiting loans was unduly favorable to the defendant.[1]

The evidence shows that on December 18, 1957, the employees of Exhibitors Service Co., who were members of Teamsters Local 211, went on strike. Later that month appellant came to Pittsburgh where Exhibitors maintained its headquarters, visited George Callahan, the president of Exhibitors, and undertook to arrange a meeting between the parties as a first step toward settling the strike. At the conclusion of their first discussion of this labor dispute, Callahan gave Baker one hundred dollars. In the court below Callahan testified: "I gave him a hundred dollars, and I said, 'this will cover your expenses for such a meeting or meetings', and—that's it". It is not contended that anything to the contrary was said on that occasion, or that it was then made manifest that either party viewed the transaction as a loan. Several days later the two men met again and Callahan gave the appellant seventy-five dollars saying: "This will see you back to Detroit". During January the men met once more and discussed Callahan's labor problems. At that time, again according to Callahan's testimony, Baker complained of financial difficulties, but did not ask for money. However, since the two had now become friendly, Callahan volunteered to let Baker have three hundred dollars. Callahan quoted the appellant as saying: "I will accept it on a loan basis." It is conceded, however, that no evidence of indebtedness was given and no repayment has been made.

In August 1958, Callahan appeared as a witness before a committee of the United States Senate investigating labor-management relations. On that occasion he was questioned about various transactions, including his dealings with the appellant. It was not until after these hearings that Callahan wrote to Baker requesting for the first time that Baker repay the sums which he had received from Callahan.

We think a jury could reasonably have been convinced on this evidence that the designation of the payments as loans represented a reappraisal of the transactions by the parties after the Senate investigation had given them publicity and had brought their propriety into question. The fact that Callahan admitted tendering the first two payments to compensate appellant for the time and expense involved in his helpful visit to Pittsburgh greatly strengthens the logical inference that the loan theory was an afterthought. We are satisfied that proof was adequate on this aspect of the case.

An entirely different question is raised by appellant's second contention. It is argued that during the trial the government introduced and placed principal reliance upon incompetent evidence in its effort to prove that Baker was acting as a "representative" of the employees of Exhibitors when he received money from Callahan. The strongest evidence of appellant's representative status was his own testimony at the already mentioned Senate Committee hearing, which was introduced in evidence over appellant's objection in the court below. Before the Senate Committee appellant had testified that as a union official he worked under the direction of "Mr. Harold Gibbons and Mr. James R. Hoffa". Mr. Hoffa, who testified in the present case, was identified as an International Vice President of the Teamsters and a member of the International Executive Committee. Appellant also testified before the Senate Committee with reference to the Exhibitors' strike that "I was sent in there to try and arbitrate and get the contract signed and settled". He added: "I went in there to see what I could do in trying to get the people back to work. * * * I undertook to get in there and

---

1. The Supreme Court left this question open in United States v. Fruehauf, 1961, 365 U.S. 146, 81 S.Ct. 547, 5 L.Ed.2d 476. The issue will not arise in future cases because the 1959 amendment of Section 302(b) specifies loans among the types of transactions prohibited.

see that the strike would be settled". He also testified that he "went to the [local] union office and sat down and discussed the strike that was in progress, and we wanted to get that ended". He explained: "It is my job to try to end strikes as well as organize them". At another point he testified that although he was an organizer for the "Central Conference", an area which did not include western Pennsylvania, he on occasion had to go elsewhere to settle strikes.

Appellant urges that the introduction of these admissions as evidence of the capacity in which he acted and the role he played in the negotiations for the settlement of the Teamsters' strike at Exhibitors was erroneous on two grounds. First, he says that such admissions may be used as evidence only if they are corroborated, and that corroboration is lacking here. Second, he claims that an applicable statute prohibits the use of testimony before a congressional committee as evidence against the witness in any future criminal proceeding.

We consider first the problem of corroboration. In Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101, the Supreme Court considered a conviction of bribing a federal officer. At the trial the prosecution had introduced an admission previously made by the defendant that he had in fact paid money to the officer, though he did not admit that this payment was a bribe. The Supreme Court took the general position "that an accused's admissions of essential facts or elements of the crime, subsequent to the crime, are of the same character as confessions and that corroboration should be required". 348 U.S. at page 90, 75 S.Ct. at page 163. The court then considered to what extent corroboration is required and ruled as follows:

> " * * * we think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to estab-

lish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. * * * It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." 348 U. S. at page 93, 75 S.Ct. at page 164.

On the same day, the Supreme Court decided Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192. The charge there was willful evasion of income tax and the prosecution had introduced in evidence an extra-judicial statement by the accused as to his net worth in 1945. This starting point was essential to the proof of increased net worth, used as a measure of income, during the following years which were covered by the indictment. Considering the problem of corroboration in this context, the Supreme Court said:

> "[D]ebate has centered largely about two questions: (1) whether corroboration is necessary for all elements of the offense established by admissions alone, * * * and (2) whether it is sufficient if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged * * *. We answer both in the affirmative. All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." 348 U.S. 156, 75 S.Ct. 199.

■ In the light of these recent authoritative pronouncements, we think the prosecution's burden of corroboration in this case is satisfied if other evidence at

least circumstantially suggests that the facts admitted are true. In this view of the matter, it is demonstrable that the appellant's admissions were adequately corroborated.

■ Without reference to the testimony before the Senate Committee, the evidence in this case shows that appellant was an organizer for the International Brotherhood of Teamsters and that at times his assignments came directly from James R. Hoffa, Vice President of the International and a member of the Executive Committee of the International. Hoffa himself testified that the Exhibitors strike had come to his attention and to the attention of the Executive Committee. He admitted that he may have discussed this matter with appellant. Shortly thereafter appellant came to Pittsburgh and sought to promote a negotiated settlement of the strike. He arrived at a time when the striking Teamsters' local had broken off all negotiations with management. It is clear and undisputed that the day following his first talk with management appellant obtained a resumption of face to face negotiations between the president of Exhibitors and the president of the local. This immediate acceptance of his good offices by local union leadership is some indication of representative status.

We think this body of attendant circumstances is consistent with and inferentially supports appellant's admission that he came to Pittsburgh under direction of the top leadership of the International Union for the purpose of aiding in the negotiation and settlement of the Teamsters' grievance with reference to the Exhibitors' operation. For when one considers the fact that appellant's superiors in the top leadership of the International Union knew of and were concerned with the Exhibitors strike, and the fact that appellant intervened effectively in the deadlocked negotiations almost immediately after his arrival in Pittsburgh, it becomes difficult to believe that appellant did not come to Pittsburgh and was not there recognized as a representative of higher authority in the Teamsters' organization. In other words, this evidence makes it seem very likely that appellant's admission before the Senate Committee was truthful. That is sufficient corroboration. In reaching this conclusion we also have considered that the nature and circumstances of the admissions in question provide no reason for special concern that they may be untrustworthy. The parts of appellant's prior testimony used now do not concern points which were then contentious. It is difficult to imagine anything the appellant might have thought to gain by falsely telling the Senate Committee that his superiors had authorized him to try to settle the Exhibitor strike.

■ As a second reason for excluding his statement made before the Senate Committee, appellant urges that the Act of June 25, 1948, 62 Stat. 833, 18 U.S.C., 1952 ed., § 3486, is a comprehensive prohibition against the use of testimony given by a witness before a congressional committee as evidence against such witness in any criminal proceeding. Unquestionably that enactment so provides. However, we think it equally clear that the 1948 statute was superseded—not supplemented as appellant urges—by the Act of August 20, 1954, 68 Stat. 745, 18 U.S.C., 1958 ed., § 3486, which provides immunity for certain witnesses before congressional committees, but only with respect to testimony given in the course of investigations of critical areas of national security or defense. In relevant part the 1954 Act reads:

*"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That title 18, United States Code, section 3486, is amended to read as follows: '§ 3486. Compelled testimony tending to incriminate witnesses; immunity

" '(a) In the course of any investigation relating to any interference with or endangering of, or any plans or attempts to interfere with or endanger the national security or defense of the United

States by treason, sabotage, espionage, sedition, seditious conspiracy or the overthrow of its Government by force or violence, no witness shall be excused from testifying * * * on the ground that the testimony or evidence required of him may tend to incriminate him * * * nor shall testimony so compelled be used as evidence in any criminal proceeding (except prosecutions described in subsection (d) hereof) against him in any court.

" '(b) * * *.

" '(c) * * *.

" '(d) * * *.

"Sec. 2. The analysis of chapter 223 of title 18, United States Code, is amended by striking out '3486. Testimony before Congress; immunity.' and inserting in lieu thereof the following:

" '3486. Compelled testimony tending to incriminate witness; immunity.' "

It is clear from the face of this statute that the language which precedes the paragraph designated "Sec. 2" constitutes a completely new Section 3486, reenacting the section number and substituting an entirely new text. Appellant challenges this reading because the new enactment does not begin with the words "Sec. 1." He argues that this means that the original language of Section 3486 survives as the first section of the amended statute. The obvious answer is that in enacting "§ 3486" it would be odd and confusing to designate the first paragraph as "Sec. 1." Congress merely followed the obviously orderly procedure in this situation, using letters of the alphabet rather than numbers to designate the principal subdivisions of the new Section 3486.

Appellant also misconceives the significance of the last portion of the new enactment which is designated "Sec. 2." That is a separate provision directing that the catch line of the new Section 3486, shall be substituted for the old catch line in the formal outline of the particular chapter of the Code. Indeed, to make it entirely clear that this merely formal provision is not a part of the text of Section 3486, the statutory draftsmen placed quotation marks around the new language of Section 3486 but did not similarly enclose the second section. For these reasons, we find no merit whatever in the argument that the original Section 3486 remained in force after the new language of that section was enacted.

Appellant has urged other points, but in our judgment they are without merit and do not require discussion.

This conviction will be affirmed.