**FEDERAL TRADE COMMISSION,**
Petitioner,

v.

**JANTZEN, INC., Respondent.**

No. 20021.

United States Court of Appeals
Ninth Circuit.

Feb. 4, 1966.

254

James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, Thomas F. Howder, Richard C. Foster, Attys., Federal Trade Commission, Washington, D. C., for petitioner.

Edwin S. Rockefeller, Joel E. Hoffman, Wald, Harkrader & Rockefeller, Washington, D. C., Franklin H. Mize, Portland Or., for respondent.

Before POPE, JERTBERG and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

The Federal Trade Commission seeks enforcement of a cease and desist order, issued by it on January 16, 1959 (55 F.T.C. 1065) and modified on March 26, 1959.[1] No proceedings relating to the order were begun by either party in this court or any court until the present petition was filed on April 22, 1965. It arises from a proceeding begun by the Commission on July 22, 1964, based upon the Commission's belief that Jantzen might not be complying with the order.

At a prehearing conference on November 23, 1964, Jantzen admitted certain violations of the order. At the same time Jantzen took the position (1) that the order is invalid and (2) that, if it is valid, there is no method provided by law for its enforcement. It presents the same contentions here. We hold that we have no jurisdiction in this proceeding, and therefore do not pass upon the first question.

The cease and desist order followed the filing of a Commission complaint that charged violation of Section 2(d) of the Clayton Act, 38 Stat. 730 (1914) as amended by the Robinson-Patman Act, 49 Stat. 1526 (1936), 15 U.S.C. § 13(d) (1964). The Commission was authorized to issue such an order by Section 11 of the Clayton Act, 38 Stat. 734 as amended, 64 Stat. 1125 (1950), 15 U.S.C. § 21 (1958). We therefore refer to it as a "Clayton Act order," to distinguish it from orders issued by the Commission in the course of its duty to enforce the Federal Trade Commission Act, 38 Stat. 717, 719, § 5 (1914), 15 U.S.C. § 45, as amended. We refer to these as F.T.C. Act orders.

Until 1938, the method of enforcing both types of orders was essentially the same. Section 11 of the Clayton Act, supra, as it read when the order here involved was issued, contained 7 paragraphs. The first authorized the Commission to enforce, inter alia, section 2. The second set up a procedure for the issuance by the Commission and service of a complaint, for a hearing, and, upon finding violation, for the issuance of a cease and desist order. The third dealt with enforcement of such an order, and read, in pertinent part, as follows:

"If such person fails or neglects to obey such order of the Commission * * * while the same is in effect, the Commission * * * may apply to the United States court of appeals * * * for the enforcement of its order * * *. [T]he court * * *

1. The order was issued pursuant to a written consent, whereby Jantzen waived any further procedural steps, the making of

findings of fact and conclusions of law, and all right to contest the validity of the order.

shall have power to make and enter * * * a decree affirming, modifying, or setting aside the order of the Commission * * *. The judgment and decree of the court shall be final, except that the same shall be subject to review by the Supreme Court upon certiorari * * *." (64 Stat. 1127–1128)

The fourth gave the respondent a similar right to petition the Court of Appeals for review of the order, without limit as to the time within which to do so. The remaining 3 paragraphs are not material to our problem.

Section 5 of the Federal Trade Commission Act, supra, contained, in its third, fourth and fifth paragraphs, substantially identical provisions regarding F.T.C. orders.

No penalty attached to the violation of either type of order. In order to obtain an enforcing order in the Court of Appeals, a second violation had to be shown. This was done, as in this case, by the Commission's ordering an investigation, appointing a hearing officer, and, usually, holding a hearing.[2] (See the Commission's Rules at 16 C.F.R. § 1.35.) If a violation was found, the Commission then sought enforcement in the Court of Appeals. No penalty attached to this second violation, other than the entry by the court of a decree enforcing the order. Such a decree had the force of an injunction, and, if thereafter the Commission found further violation, it could bring the respondent before the court for punishment for contempt.

Not surprisingly, this very clumsy and time consuming procedure was severely criticized, and in 1938 the Congress responded by adopting the Wheeler-Lea Act, 52 Stat. 111, section 3 of which

(52 Stat. 111–114) amended section 5 of the Federal Trade Commission Act. That section (3) states: "Section 5 of such Act * * * is hereby amended to read as follows: * * *." The amended section contains 12 paragraphs, designated (a) through (l). Paragraph (b) retains substantially the same provision for the issuance of cease and desist orders as was contained in the old third paragraph. Paragraph (c), however, is different. It provides for a petition by the respondent to the Court of Appeals for review of the order. The petition must be filed within sixty days from the date of service of the order. The court has powers similar to those conferred by the old section, but with the added power to decree enforcement. In general, the new paragraph (c) is comparable to the old fifth paragraph of the section (38 Stat. 720). The former fourth paragraph, providing for a petition by the Commission, is omitted. Paragraphs (g), (h), (i), and (j) provide for the finality of Commission orders— either when the period in which to petition for review expires or, if there be such a petition, then within a fixed time after the completion of subsequent court and Commission proceedings. All of this is new, as is paragraph (l). It subjects violators of final orders to "a civil penalty of not more than $5,000 for each violation." This has since been amended (64 Stat. 21, 1950) to provide that each separate violation shall be a separate offense, and, if the violation is a continuing one, each day of its continuance is a separate offense.

The normal rule is that when an Act amends a previous Act "to read as follows" this is as much an express repeal of those provisions which are omitted[3] as it is an express enactment of

2. A hearing was not necessary here, because of Jantzen's admissions and stipulation of violation at a pre-hearing conference.

3. No doubt the Congress could add to each such amending statute a provision that "everything omitted by this Act from the statute (or section) that is hereby amended is hereby repealed," or

other words to like effect, but the law does not require such laborious absurdities. See Heinze v. Butte & Boston Consol. Mining Co., 9 Cir., 1901, 107 F. 165, 167; United States v. Kelly, 9 Cir., 1899, 97 F. 460, 462; United States v. Baker, 3 Cir., 1961, 293 F.2d 613, 617, 618; H. Rouw Co. v. Crivella, 8 Cir., 1939, 105 F.2d 434, 436; Rowan v. Ide, 5 Cir., 1901, 107 F. 161; Columbia Wire

those provisions which are added and a continuation in effect, rather than a repeal and new enactment, of those provisions which remain unchanged.

No doubt in recognition of this rule, the Wheeler-Lea Act deals with its effect on pending cases. Section 5(a) of the amending Act reads:

"(a) In case of an order by the Federal Trade Commission to cease and desist, served on or before the date of the enactment of this Act, the sixty-day period referred to in section 5(c) of the Federal Trade Commission Act, as amended by this Act, shall begin on the date of the enactment of this Act." (52 Stat. 117)

Thus, if the order before us were an F.T.C. order, we would have no problem. The order would be final and enforcible via the civil penalty route, and the Commission would not be here.

■ But Clayton Act orders were not affected by the Wheeler-Lea Act. They are, however, affected by the so-called Clayton Finality Act, 73 Stat. 243 (1959); 15 U.S.C. § 21 (1964). In substance, it does for Clayton Act orders what the Wheeler-Lea Act did for F.T.C. orders. The technique of amendment is the same. It provides, in pertinent part:

"(a) the first and second paragraphs of section 11 of the [Clayton] Act * * * are hereby redesignated as subsections (a) and (b) of such section, respectively."

It then adds a sentence to the second paragraph, which it designates as (b), dealing with proceedings before the Commission leading to issuance of a cease and desist order. It continues:

"(c) The third, fourth, fifth, sixth, and seventh paragraphs of

such section are amended to read as follows:

"(c) Any person required by such order of the commission or board to cease and desist from any such violation may obtain a review of such order in the court of appeals of the United States for any circuit within which such violation occurred or within which such person resides or carries on business, by filing in the court, within sixty days after the date of the service of such order, a written petition praying that the order of the commission or board be set aside. * * *" (73 Stat. 243)

It is unnecessary to reproduce the balance of the amended section. It is almost verbatim the same as section 5 of the Federal Trade Commission Act as amended by the Wheeler-Lea Act. The effect of the statute is to produce a revised section 11 of the Clayton Act, containing 12 paragraphs designated (a) through (l), and providing the same method of review at the instance of the respondent only, the same power of the court, the same time limitation, the same rules as to finality, and the same civil penalties for violations as does amended section 5 of the Federal Trade Commission Act.

The former third paragraph which we have quoted in part earlier in this opinion is omitted in its entirety. That is the paragraph which provided for the type of proceeding to enforce, brought here by the Commission, that is now before us. For reasons already stated, we are of the opinion that the amendment, by omitting the third paragraph, repealed it.

Like the Wheeler-Lea Act, the Finality Act contains a paragraph relating to prior cases, which reads:

"Sec. 2. The amendments made by section 1 shall have no applica-

Co. v. Boyce, 7 Cir., 1900, 104 F. 172, 174; Endlich, Interpretation of Statutes § 196 (1888); Crawford, Statutory Construction §§ 304, 305 (1940); 1 Sutherland, Statutory Construction § 1932 (3d ed. 1943); 82 C.J.S. Statutes § 294, pp. 503–504; cf. Posadas v. National City

Bank, 1936, 296 U.S. 497, 502–506, 56 S.Ct. 349, 80 L.Ed. 351; Murdock v. City of Memphis, 1875, 87 U.S. (20 Wall.) 590, 617, 22 L.Ed. 429; Stewart v. Kahn, 1870, 78 U.S. (11 Wall.) 493, 502, 20 L.Ed. 176.

tion to any proceeding initiated before the date of enactment of this Act under the third or fourth paragraph of section 11 of the Act entitled 'An Act to supplement existing laws against unlawful restraints and monopolies, and for other purposes', approved October 15, 1914 (38 Stat. 734, as amended; 15 U.S.C. 21). Each such proceeding shall be governed by the provisions of such section as they existed on the day preceding the date of enactment of this Act." (73 Stat. 245–246).

It will be noted that, unlike the corresponding section 5(a) of the Wheeler-Lea Act, this section does not deal with cease and desist orders issued before its effective date, nor provide for their becoming final within the meaning of the amended Act. It deals solely with proceedings begun in a Court of Appeals, which is the subject to which the former third and fourth paragraphs related. Thus the third paragraph is expressly continued in effect for this very limited purpose, namely, the completion of proceedings for enforcement initiated by the Commission in a Court of Appeals. To us, this is a strong indication that the Congress knew, and intended, that it was repealed for other purposes. The Finality Act is closely modelled on the Wheeler-Lea Act, which makes the difference between section 2 of the Finality Act and section 5(a) of the Wheeler-Lea Act even more significant.

It is significant, too, we think, that immediately after the adoption of the Finality Act, the Commission itself took the position that existing Clayton Act orders would become final within 60 days, under the new law, just as under the Wheeler-Lea Act, even though the Finality Act does not contain the language to that effect that appears in section 5(a) of the Wheeler-Lea Act. The Court of Appeals for the District of Columbia Circuit refused to accept this view. Sperry Rand Corp. v. FTC, 1961, 110 U.S.App.D.C. 1, 288 F.2d 403; Schick Inc. v. FTC, 1961, 110 U.S.App. D.C. 5, 288 F.2d 407; FTC v. Nash-Finch Co., 1961, 110 U.S.App.D.C. 5, 288 F.2d 407. In its briefs in those cases, the Commission strongly urged that the former enforcement procedure, which it now seeks to invoke, was no longer in effect.

■ The Commission's present position is directly contrary to the position that it took then. This does not necessarily mean that its present view is wrong.[4] It relies, first, upon the established rule of statutory construction, that repeals by implication are not favored. That rule, however, does not apply here. As we have already indicated, we think that the repeal in this case was express. (See also, Sperry Rand Corp. v. F.T.C., supra).[5]

It next urges that the purpose of the Clayton Finality Act was to establish, for

---

4. We think that it does mean, however, that we owe little, if any, deference to the Commission's views as to what the statute does. A consistent interpretation of a statute by the body created to administer it is indeed entitled to judicial respect. But it goes beyond all reason to apply the same rule to diametrically inconsistent positions taken by such a body. If we owe any deference to the Commission's views, it is to those that were contemporaneous with the enactment of the statute, the adoption of which it helped to procure. (Cf. FTC v. Mandel Bros., Inc., 1959, 359 U.S. 385, 391, 79 S.Ct. 818, 3 L.Ed.2d 893; Norwegian Nitrogen Prods. Co. v. United States, 1933, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796.)

5. Of the five cases principally relied upon by the Commission, three are not even closely in point. Each deals with a supposed conflict between two separate statutes or sections, adopted or amended at different times, not with a statute expressly amending a particular statute or section to read in a different way. (Mercantile Nat'l Bank v. Langdeau, 1963, 371 U.S. 555, 565–567, 83 S.Ct. 520, 9 L.Ed.2d 523; United States v. Borden Co., 1939, 308 U.S. 188, 198–201, 60 S.Ct. 182, 84 L.Ed. 181; Lietz v. Flemming, 6 Cir., 1959, 264 F.2d 311, 313.) Two others are more closely in point, but do not involve the effect of the omission, in the amending statute, of a provision that was contained in the same statute before the amendment. They

258

Clayton Act orders, the same method of enforcement as was already applicable under the Wheeler-Lea Act to F.T.C. orders. There is no doubt that that was the purpose.[6] There is also no doubt that, as to future orders, that purpose was fully accomplished. But it is equally clear, as we have already shown, that the Congress dealt with orders already outstanding in a different manner in the two Acts. In the case of F.T.C. Act orders, it made the new remedy fully applicable to existing orders. In the case of Clayton Act orders, it did not do this. Instead, it expressly preserved the old methods, but only as to a limited class of such orders.

The Commission says that it has case authority for its position. It cites two cases in which enforcement of a pre-Finality Act order was decreed, without opinion: FTC v. Pacific Gamble Robinson Co., 9 Cir., 1962, No. 18,260, not reported, and FTC v. Benrus Watch Co., 2 Cir., 1962, No. 27,752, not reported. The order was not opposed in either case. These cases are not authority on the question.[7] It also cites two cases involving investigations by it to determine whether pre-Finality Act orders were being obeyed: Wanderer v. Kaplan, D.D. C., 1962, CCH Trade Cases, ¶ 70,535; Nash-Finch Co. v. FTC, D.Minn., 1964, 233 F.Supp. 910. Neither of these cases

both hold that, insofar as former language is retained in the amended section, there has not been a repeal and a new enactment, but only the continuance in effect of the old provisions that are thus retained. (Posadas v. National City Bank, 1936, 296 U.S. 497, 506, 56 S.Ct. 349; Ritholz v. March, 1939, 70 App.D.C. 283, 105 F.2d 937). Ritholz is the converse of this case. It deals with the Wheeler-Lea Act, and holds that, because the portion of section 5 of the Federal Trade Commission Act authorizing the Commission to issue cease and desist orders was retained in the amended section, there was no repeal and new enactment of that portion, but that it continued in effect. We quite agree, but that does not answer the question here posed.

6. The title of the Clayton Finality Act reads:

"AN ACT

To amend section 11 of the Clayton Act to provide for the more expeditious enforcement of cease and desist orders issued thereunder, and for other purposes." (73 Stat. 243)

The House Report accompanying the Act, H.R.Rep. No. 580, 86th Cong., 1st Sess. 4, quoted in FTC v. Henry Broch & Co., 1962, 368 U.S. 360, at 365–366 n. 6, 82 S.Ct. 431, at 434, 7 L.Ed.2d 353 says:

"The Clayton Act, in its present enforcement procedures, permits a person to engage in the same illegal practices three times before effective legal penalties can be applied as a result of action by the commission or board vested with jurisdiction. First, in order to issue and serve a cease-and-desist order initially, the commission or board must investigate and prove that the respondent has violated the prohibitions of the Clayton Act. No provision of the Clayton Act, however, makes the commission or board's cease-and-desist order final in the absence of an appeal by the respondent for judicial review. At the present time, the Clayton Act contains no procedure by which the commission or board may secure civil penalties for violations of its orders.

"Second, before the commission or board may obtain a court ruling that commands obedience to its cease-and-desist order, it must again investigate and prove that the respondent had violated both the order and the Clayton Act. The jurisdiction of the court of appeals, under the present provisions of Clayton Act section 11, cannot be invoked by the commission or board unless a violation of the cease-and-desist order is first shown.

"Third, enforcement of the court's order must be secured in a subsequent contempt proceeding, which requires proof that new activities of the respondent have violated the court's order. This entails a third hearing before the commission and a review thereof by the court of appeals.

"In contrast, the procedures that are contained in the Federal Trade Commission Act for enforcement of cease-and-desist orders issued thereunder are much simpler and more direct. A cease-and-desist order issued pursuant to section 5 of the Federal Trade Commission Act, as amended, becomes final upon the expiration of the time allowed for filing a petition for review, if no such petition is filed within that time."

7. Brown Shoe Co. v. United States, 1962, 370 U.S. 294, 307, 82 S.Ct. 1502, 8 L.Ed. 2d 510; Cross v. Burke, 1892, 146 U.S. 82, 87, 13 S.Ct. 22, 36 L.Ed. 896.

involved the jurisdiction of a Court of Appeals to enforce such an order. Such dicta as they contain is hardly authoritative on the question.

Next, it cites dicta in Sperry Rand Corp. v. FTC, supra,[8] and language in FTC v. Henry Broch & Co., supra, fn. 6.[9] It is perfectly clear that the question here presented was not before the court in either case. We have already discussed *Sperry Rand Corp.* The *Broch* case also involved a pre-Finality Act order, issued December 10, 1957. The respondent petitioned for review, and the Seventh Circuit set the order aside on December 11, 1958 (Henry Broch & Co. v. FTC, 261 F.2d 725). The Commission sought and obtained certiorari, and the Supreme Court reversed on June 6, 1960 (FTC v. Henry Broch & Co., 1960, 363 U.S. 166, 80 S.Ct. 1158, 4 L.Ed.2d 1124). On remand, the Seventh Circuit modified the order, and affirmed it as modified on November 3, 1960 (Henry Broch & Co. v. FTC, 285 F.2d 764). The Commission again sought certiorari, and again the Supreme Court granted it, and reversed (368 U.S. 360, 82 S.Ct. 431, 7 L. Ed.2d 353). Thus, when the Finality Act was passed in 1959, the *Broch* case was one of those in which a proceeding had been initiated under the fourth paragraph of section 11 of the Clayton Act. It falls squarely within the language of Section 2 of the Finality Act, and the Supreme Court's language, as applied to it, is clearly correct. As applied to this case, which does not fall within Section 2, the language is not even applicable dictum.

Finally, the Commission asserts that, unless its views are accepted, "forty-five years of Clayton Act enforcement and almost 400 orders to cease and desist would be wiped from the books." It urges that this result is quite contrary to the congressional intent, which was, as we have seen, to strengthen enforcement by the Commission of the Clayton Act. It says that Congress "did not intend to grant amnesty to the almost 400 law violators under order." To these arguments there are two answers, one legal, the other practical.

■ The legal effect of the Commission's argument is to ask us to insert into the Finality Act something that is not there. In *Sperry Rand Corp.*, supra, the Commission asked the court, in substance, to insert into the Finality Act the provisions of section 5(a) of the Wheeler-Lea Act. Indeed, it had tried to accomplish the same thing by press release. The court quite properly declined to do what the Commission asked. (See 288 F.2d at 406.) What we are now asked to do, in substance, is to insert into section 2 of the Finality Act a provision making it applicable to outstanding cease and desist orders as to which proceedings had *not* been initiated, before the date

---

8. There the court said:
"Enforcement due to any violation of the consent order which might occur is left to the provisions of the statute as they existed at the time the order was entered. It follows that the basis for the relief sought, namely, review of the order of November 3, 1958, and of the order of the Commission denying petitioner's motion to modify or set aside the order of November 3, 1958, disappears." (288 F.2d at 406–407)

9. The language relied on is:
"In considering Broch's challenge to paragraph (2) it is necessary to observe that the 1959 amendments to § 11 of the Clayton Act—which substitute for the Clayton Act provisions for enforcement of administrative orders those in § 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45—do not apply to enforcement of the instant order. In consequence, Broch cannot be subjected to penalties except for violation of an enforcement order yet to be entered by an appropriate Court of Appeals, to be predicated upon a determination that some particular practice of Broch violated the Commission's order. Thus Broch is not, by virtue of that order, presently acting under the risk of incurring any penalty without further administrative and judicial consideration and interpretation, despite the fact that he has already received determination of his petition for review. Federal Trade Comm. v. Ruberoid Co., 343 U.S. 470, 477–480 [72 S.Ct. 800, 805–806, 96 L.Ed. 1081]." (368 U.S. at 364–365, 82 S.Ct. at 434)

of enactment, under the third and fourth paragraphs of the former section 11 of the Clayton Act, and this in spite of the fact that the section applies only where such proceedings *have* been initiated. Whether the omission of such a provision was intentional, as it may have been, or inadvertent, as it may also have been, is immaterial. It is not the business of courts, under the guise of construction, to put into a statute what Congress has left out.[10]

The practical answer to the Commission's argument is clear. The Commission is indulging in hyperbole. We do not, by our holding, wipe forty-five years of Clayton Act enforcement and almost 400 orders to cease and desist from the books, nor do we grant amnesty to any law violator, much less to 400. The orders are still there, and still as valid as they ever were. Part of the Commission's function has always been to educate and to persuade. The orders, and the Commission's opinions and findings on which they are based, are just as authoritative and persuasive as they ever were. There is a presumption that people obey the law; we would suppose that it applies to obedience to FTC orders. The fact that there are 400 orders outstanding from forty-five years of enforcement, none of which the Commission has yet sought to enforce, is somewhat persuasive that the presumption is a valid one.

Moreover, as the Commission points out in its brief, the former enforcement

procedures were "somewhat inadequate," since "no meaningful sanctions were provided for enforcement of cease and desist orders." The Commission says:

"Senator Sparkman, speaking on the floor of the Senate in 1957, commented (103 Cong.Rec. 690): 'In this light it is readily understandable why contempt proceedings to enforce a Clayton Act order have been successful only twice since 1940.' "

See also fn. 6, supra. We cannot see any good reason why the Commission is so desirous of perpetuating so poor a method of enforcement,[11] with its requirement that three successive violations be found before one can be punished. (FTC v. Ruberoid Co., 1952, 343 U.S. 470, 72 S.Ct. 800, 96 L.Ed. 1081.) All that the Commission has to do where it finds a violation of the Clayton Act that is also a violation of an old cease and desist order is to enter a new cease and desist order. Such an order will give the Commission the full benefit of the Finality Act, and after only two bites at the apple instead of three. Congress may well have felt that this was a better disposition of old cases than to perpetuate the old system as to old orders. This, we think, is the result of what Congress did.

In its reply brief, the Commission suggests, for the first time, in a footnote, that the General Savings Statute, 61 Stat. 635 (1947), 1 U.S.C. § 109, preserves the remedy that it seeks.[12]

---

10. Hanover Bank v. Commissioner, 1962, 369 U.S. 672, 677–678, 82 S.Ct. 1080, 8 L.Ed.2d 187; Iselin v. United States, 1926, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566; Ebert v. Poston, 1925, 266 U.S. 548, 554, 45 S.Ct. 188, 69 L.Ed. 435.

11. The Commission, in its brief, says that the system that it here seeks to perpetuate was characterized, in Congressional hearings as "ineffectual; cumbersome; lacking teeth; awkward, slow and without meaningful sanction; intolerable, laborious, time consuming, very expensive and entirely unnecessary; inadequate; ponderous; shocking; wasteful and uneconomic," and its enforcement of its or-

ders under that system as "handicapped, hampered and weakened," leaving the Commission "poorly equipped to discharge its responsibilities," and leading to "diminution of the intended purpose" of the Clayton Act. We find it not surprising that Congress did not choose to perpetuate such an obviously objectionable system. We also find it somewhat surprising that the Commission is now asking us, by a bit of judicial legerdemain, to recreate it.

12. "§ 109. *Repeal of statutes as affecting existing liabilities.*
The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repeal-

We think not. This proceeding is not based upon a violation that occurred *before* the Finality Act was adopted, but on further violations occurring *after* its adoption in 1960 and 1962. (See FTC v. Ruberoid Co., supra.) Thus there is not here involved a "penalty, forfeiture or liability" incurred under the former statute. Here, we deal with a statute which formerly conferred jurisdiction on this court, and which, except as to a limited class of cases, of which this is not one, has been repealed. Cf. De La Rama S.S. Co. v. United States, 1953, 344 U.S. 386, 390, 73 S.Ct. 381, 97 L.Ed. 422. Moreover, the violations which, had they occurred before the enactment of the new statute, were a prerequisite to our jurisdiction, are, under the new statute, the basis for a new cease and desist order, enforcible by what the Commission says is a better method. Cf. United States v. Obermeier, 2 Cir., 1950, 186 F. 2d 243, 251–255, cert. denied, 1951, 340 U.S. 951, 71 S.Ct. 569, 95 L.Ed. 685.

The petition is dismissed for want of jurisdiction.

ing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liabilty. * * * "