**SPERRY RAND CORPORATION,**
Petitioner,

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 15369.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 8, 1960.

Decided Feb. 9, 1961.

Mr. G. A. Chadwick, Jr., Washington, D. C., with whom Messrs. Francis J. Mc-Namara, Washington, D. C., and John A. Beck, Washington, D. C., were on the brief, for petitioner.

Mr. Alan B. Hobbes, Asst. Gen. Counsel, Federal Trade Commission, with whom Mr. Miles J. Brown, Atty., Federal Trade Commission, was on the brief, for respondent.

Messrs. Edward F. Howrey and William Simon, Washington, D. C., filed a brief on behalf of Nash-Finch Co., as amicus curiae.

Mr. Joseph W. Burns, New York City, filed a brief on behalf of The Ruberoid Co., as amicus curiae.

Before PRETTYMAN, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The Federal Trade Commission on December 27, 1956, issued a Complaint against petitioner, Sperry Rand Corporation, charging that it (1) had discriminated in prices between competing retail customers in the sale of its electric shavers, in violation of subsection (a) of section 2 of the Clayton Act, as amended, 15 U.S.C.A. § 13(a); (2) had paid for advertising and other services and facilities in violation of subsection (d) of said section 2; and (3) had engaged in resale price maintenance in violation of section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45. Negotiations and other proceedings ensued, followed by a settlement which took the form of a consent Cease and Desist Order of the Commission, entered November 3, 1958.

The order was in the form customarily used by the Commission for such violations: petitioner was ordered in general terms to cease and desist from discriminating, directly or indirectly, in the price of its products of like grade and quality by selling to any purchaser at net prices higher than those charged any other purchaser competing with such unfavored purchaser in the resale and distribution of the products. The order also prohibited petitioner from engaging in violations of the other two sections re-

ferred to in the Complaint.[1] At the time of its issuance no penalty could be imposed for violation of the order itself. In event of such violation the procedure then in effect required an application to be made to the appropriate United States Court of Appeals for enforcement. Subsequent to an enforcement order a violator of this court order would be considered in contempt of court, when penalties could be imposed for the first time for the contempt.[2] No proceedings for either enforcement or review of the present order were initiated prior to the enactment on July 23, 1959, of Public Law 86–107,[3] hereinafter usually referred to as the amendment.

The amendment substantially changed the situation with respect to enforcement of orders to which it applies. It provides that within sixty days after issuance of an order prohibiting the violation of certain sections of the Clayton Act the person subject to the order may have it reviewed by filing a petition in an appropriate Court of Appeals. If this is not done the order becomes final. If, however, a petition is filed the order becomes final according to the course the litigation takes. A civil penalty of not more than $5,000 may be imposed for each violation of a Commission order which has become final.

The differences in the impact of an order under the enforcement procedure in effect prior to the amendment and an order subject to the new procedure are substantial. In the former case, as we have seen, when a violation is first established no penalty follows unless the violation continues after court review and approval of the order in the form of a court decree. The violation then is contempt of court. Under the amendment, however, once the Commission order it-

self becomes final a heavy penalty attaches to each violation.

On July 28, 1959, a few days after the date of the amendment, the Commission issued a document in the form of a press release.[4] It announced that persons subject to outstanding orders, which would include the one here involved, would have sixty days from the date of enactment of the amendment within which to file petitions for review. In the event court proceedings were not so instituted the document stated that such orders would become final at the expiration of said sixty days. Petitioner thereupon filed with the Commission a motion to reopen the proceedings and for modification of the order of November 3, 1958. The motion was denied, whereupon the petition to this court was filed within sixty days from date of enactment of the amendment. Petitioner seeks review both of the consent order that it might be either modified or set aside because of the new enforcement and penalty provisions, and also of the order of the Commission denying petitioner's motion to reopen the proceedings and modify the order. In the alternative petitioner asks for a ruling that the enforcement and penalty provisions of the amendment do not apply to the order of November 3, 1958.

The position of petitioner is that the Commission has interpreted the amendment to cover all orders entered prior to its enactment except those as to which enforcement or review proceedings had been initiated in a Court of Appeals, which are excepted under section 2 of the amendment, 15 U.S.C.A. § 21 note. The Commission does so interpret the amendment. Petitioner contends that if this interpretation is correct petitioner is invalidly subjected to the risk of severe penalties which were not in existence when it consented to the order. If, how-

1. Petitioner does not seek review of that portion of the consent order issued on the basis of the alleged violation of section 5 of the Federal Trade Commission Act.

2. If no petition for enforcement had been filed, the person subject to the order

could at any time petition an appropriate Court of Appeals for review of the order.

3. 73 Stat. 243 (1959), 15 U.S.C.A. § 21.

4. FTC Press Statement on Public Law 86–107, July 28, 1959.

ever, the amendment does not apply to the order of November 3, 1958, the grounds upon which petitioner seeks review disappear. We think the amendment does not apply.

The Commission says the amendment is procedural and that, therefore, retroactive application is valid, citing Federal Broadcasting System, Inc. v. Federal Communications Comm., 99 U.S.App.D.C. 320, 239 F.2d 941. We there applied the rule that a procedural or remedial amendment may be validly given retroactive application. But our present question is different; it is whether Congress has limited the coverage of the amendment so that the new enforcement and penalty provisions do not apply retroactively, that is, to a cease and desist order entered prior to the time the amendment was enacted. We think Congress has so limited the amendment. The Commission by issuing the press release rules that parties to outstanding orders have sixty days within which to petition for review before their orders become final for the purpose of imposition of monetary penalties. The Commission itself thus construes the amendment to apply to orders which become final only under the procedures of the amendment. The Commission argues, however, that consent orders are not reviewable because of their consent nature. The Commission thus says on the one hand that the amendment gives sixty days from its date for the filing of petitions for review of all outstanding orders, and on the other hand that the sixty days are of no value for purposes of review of an order previous-ly entered on consent, which, insofar as the merits are concerned, had become unreviewable when entered.

We do not agree with the position of the Commission that the amendment applies to orders which were outstanding before its enactment. By its terms the amendment covers orders which may be reviewed by the filing in an appropriate Court of Appeals of a petition "within sixty days after the date of the service of such order," with the further provision that any such order shall become final "(1) upon the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time," or if one is filed then upon the expiration of the litigation stages enumerated in subsections 1(g) and 1(h) of the amendment. The penalty provision then speaks in terms of its application to orders which have become final.[5]

It is thus seen that the amended procedures leading to the penalty provisions apply only to orders which become final under conditions set forth for the first time in the amendment itself, that is, to future orders. Petitioner's order is not of that character. The finality provisions of subsection (b) did not exist when it was entered. Therefore, petitioner's order did not become final, for the purpose of imposing a penalty under the amended procedures, prior to the amendment. And by the position of the Commission itself review may not be obtained by the filing of a petition within the sixty-day period in the case of an order entered on consent.[6]

---

5. "Any person who violates any order issued * * * under subsection (b) after such order has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $5,000 for each violation * * *. Each separate violation of any such order shall be a separate offense * * *."
§ 1(l), 73 Stat. 245 (1959), 15 U.S. C.A. § 21(l).

6. The Commission's contention that retroactive application is not involved in construing the amendment to apply to petitioner's order because any violation subject to the amendment would occur subsequent to its enactment, does not help the Commission; for here again we point out that the case turns upon the intention of Congress, regardless of whether the amendment is characterized as retroactive, prospective, substantive, or procedural. The question, in other words, is whether the new procedures of the amendment encompass a violation of an order which was outstanding before the date of the amendment. For the reason already discussed we hold they do not.

Our conclusion is supported not only by the wording of the statute but by its structure. Subsection (*l*), which contains the new penalty provisions, refers to any person who, after it becomes final, violates an order issued by the Commission under subsection (b). Petitioner's order was not issued under subsection (b). That subsection came into the statute under that description by being so "redesignated" in the opening paragraph of the amendment.

Legislative history is also consistent with our construction of the statute. We note particularly one phase of this history. In 1938 Congress enacted the Wheeler-Lea amendment [7] to the Federal Trade Commission Act, providing that Federal Trade Commission orders would be final after sixty days or upon completion of review proceedings, with $5,000 civil penalties for violation of a final order. In these respects the Wheeler-Lea amendment is similar to the Clayton Act amendment now before us. But the Wheeler-Lea amendment was expressly made applicable to orders entered prior to its enactment, accompanied with a grant by Congress itself, not by a Commission interpretation, of sixty days from the date of enactment within which court review could be sought.[8] Several bills designed to bring the enforcement procedures of the Clayton Act in conformity with the Wheeler-Lea amendment to the Federal Trade Commission Act contained similar language, but none was adopted. The omission of Congress in these circumstances to include such language cannot be supplied by the Commission press release.

The Commission argues that the language of section 2 of the amendment that the provisions of section 1 "shall have no application to any proceeding initiated before the date of enactment of this Act under the third or fourth paragraph of section 11 of the [Clayton Act]," which proceeding "shall be governed by the provisions of such section as they existed on the day preceding the date of enactment of this Act," by thus expressly excepting proceedings in which review had been sought prior to enactment, indicates that Congress intended all other orders to be subject to the amendment. Section 2, however, necessarily applies only to proceedings pending at the date of enactment of the amendment. Doubt might be thought to have existed about the application of the amendment to orders involved in proceedings in progress when the amendment was enacted. Removal of this doubt by explicitly excepting such orders cannot be construed impliedly to represent an intention on the part of Congress to apply the amendment to all other orders which were previously outstanding. Rather the contrary; for it would be more reasonable to have the amended procedures cover orders involved in unfinished proceedings than in those in which no review had been or could be sought. Excepting the former from those procedures can hardly be evidence, therefore, of a congressional intent to include the latter. In any event, any implication in the other direction is not sufficient to overcome the conclusion we reach upon consideration of all factors involved.

Enforcement due to any violation of the consent order which might occur is left to the provisions of the statute as they existed at the time the order was entered. It follows that the basis for the relief sought, namely, review of the order of November 3, 1958, and of the order of the Commission denying peti-

7. 52 Stat. 111 (1938), as amended, 15 U.S. C.A. § 45.

8. The provision reads as follows:
   In case of an order by the Federal Trade Commission to cease and desist, served on or before the date of the enactment of this Act, the sixty-day [re-view] period referred to in section 5(c) of the Federal Trade Commission Act, as amended by this Act, shall begin on the date of the enactment of this Act. Act of March 21, 1938, ch. 49, § 5(a), 52 Stat. 117, 15 U.S.C.A. § 45 note.

tioner's motion to modify or set aside the order of November 3, 1958, disappears.[9] For that reason the petition for review will be dismissed.

It is so ordered.

9. The alternative relief sought by petitioner, for a ruling respecting the applicability or not of the enforcement and penalty provisions of the amendment

to the order of November 3, 1958, is incidentally afforded by the reasoning of our opinion.