FEDERAL TRADE COMMISSION *v.*
JANTZEN, INC.

No. 310.   Argued February 14, 1967.—Decided March 13, 1967.

*Ralph S. Spritzer* argued the cause for petitioner.   On
the brief ·were *Solicitor General Marshall, Assistant*

*Attorney General Turner, Nathan Lewin, Howard E. Shapiro, James McI. Henderson* and *Thomas F. Howder.*

*Edwin S. Rockefeller* argued the cause for respondent. With him on the brief were *Donald H. Green* and *Joel E. Hoffman.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This case involves the effect of the Act of July 23, 1959, 73 Stat. 243 (Finality Act), upon orders issued by the Federal Trade Commission under § 11 of the Clayton Act, 38 Stat. 734, prior to the date of the former Act. The respondent claims that the Finality Act repealed the enforcement provisions of § 11 of the Clayton Act, 15 U. S. C. § 21 (1958 ed.), and that orders of the Commission entered prior to the enactment of the Finality Act are not now enforceable. The Court of Appeals agreed, held that it had no jurisdiction to enforce such orders and directed that the proceeding be dismissed. 356 F. 2d 253. In view of the pendency of almost 400 such orders and the conflict among the circuits [1] on the point, we granted certiorari. 385 U. S. 810.

## I.

The facts are not disputed, save on points not relevant here, and will not be stated in detail. Jantzen manufactures men's, women's, and children's apparel. On September 4, 1958, it was charged by the Commission with having violated § 2 (d) of the Clayton Act by allowing discriminatory advertising and promotional allowances to certain of its customers. Jantzen did not answer the complaint. However, it consented to the entry of a cease-and-desist order against it prohibiting further discrimination in advertising and promotional activities.

---

[1] See *Federal Trade Comm'n* v. *Pacific-Gamble-Robinson Co.,* No. 18260 (C. A. 9th Cir. 1962); *Federal Trade Comm'n* v. *Benrus Watch Co.,* No. 27752 (C. A. 2d Cir. 1962), and the instant case.

This agreement and a form of order were approved by a hearing examiner and on January 16, 1959, the order was adopted by the Commission. On July 22, 1964, some five years after the adoption of the Finality Act, the Commission ordered an investigation into charges that Jantzen had violated the 1959 consent order. Jantzen stipulated before a hearing examiner that it had violated the consent order by granting discriminatory allowances to customers in Chattanooga, Tenn., and Brooklyn, N. Y. The Commission thereafter concluded that Jantzen had violated the order. It then applied to the Court of Appeals for an order affirming and enforcing the original order. The application was based on the provisions of the third paragraph of § 11 of the original Clayton Act, which authorized the Commission, in the event such an order was not obeyed, to apply to a court of appeals for its "enforcement." Jantzen claimed that the amendment of § 11 by the Finality Act resulted in a repeal of the Commission's authority to seek, and the courts' to grant, affirmance and enforcement of such orders. The Court of Appeals agreed and dismissed the application for lack of jurisdiction. We reverse and remand the proceedings for further consideration in light of this opinion.

## II.

We start with the proposition that the Congress intended by its enactment of the Finality Act of 1959 to strengthen the hand of the Commission in the enforcement of the Clayton Act. As the report of the Committee on the Judiciary of the Senate stated: "The effectiveness of the Clayton Act . . . has long been handicapped by the absence of adequate enforcement provisions. . . . S. 726 would put teeth into Clayton Act orders and would fill the enforcement void which has existed for many years." S. Rep. No. 83, 86th Cong., 1st Sess., 2 (1959). The procedures existing prior to the adoption of the Finality

Act required the Commission to investigate, and after complaint, prove a violation of the Clayton Act before it could issue a cease-and-desist order. After its issuance a violation of the order had to be investigated and proved before the Commission might obtain an order compelling its obedience. Only then could a court of appeals order enforcement. And under *Federal Trade Comm'n* v. *Ruberoid Co.*, 343 U. S. 470 (1952), a contempt proceeding would not lie except on allegations of violation of the Act a third time and proof of a failure or refusal to obey the Commission's order, previously affirmed.

The Finality Act eliminated these "laborious, time consuming, and very expensive" procedures. S. Rep. No. 83, *supra*, at 2. As Congressman Huddleston, one of the principal supporters of the bill which later became the Act, stated to the House:

> "The bill . . . is in effect a perfecting amendment to the Clayton Act. It has no other purpose than to effect the will of Congress with respect to the role of the Federal Trade Commission in Clayton Act enforcement in the same manner and to the same degree that the will of Congress was effectuated by the Wheeler-Lea amendments to the Federal Trade Commission Act." 105 Cong. Rec. 12732.

The remarks of Congressman Celler, Chairman of the House Judiciary Committee, of Congressman Roosevelt and of other supporters of the bill were substantially the same. 105 Cong. Rec. 12730–12733.

The Wheeler-Lea Amendment clarified the procedures of the Federal Trade Commission Act but did not amend those of the Clayton Act. Under the Wheeler-Lea Amendment orders issued by the Commission were to become final 60 days after their issuance or upon affirmance by a court of appeals in which a petition for review had been filed. However, § 5 (a) of the Amendment expressly provided that orders outstanding at the time

of the adoption of the Amendment would become final 60 days after the latter date or upon affirmance in review proceedings instituted during that 60-day period. 52 Stat. 117. The Finality Act instead of using the language of § 5 (a) of the Wheeler-Lea Amendment contains a special provision, § 2, which reads as follows:

"The amendments made by section 1 shall have no application to any proceeding initiated before the date of enactment of this Act under the third or fourth paragraph of section 11 of the [Clayton] Act . . . . Each such proceeding shall be governed by the provisions of such section as they existed on the day preceding the date of enactment of this Act."

The Court of Appeals thought the use of this language was significant in that, unlike § 5 (a), it "does not deal with cease and desist orders issued before its effective date, nor provide for their becoming final within the meaning of the amended Act. It deals solely with proceedings begun in a Court of Appeals . . . . Thus the third paragraph [of § 11] is expressly continued in effect for this very limited purpose, namely, the completion of proceedings for enforcement initiated by the Commission in a Court of Appeals. . . . [T]his is a strong indication that the Congress knew, and intended, that it was repealed for other purposes." The Court of Appeals buttressed this reading of the Finality Act by noting that the Commission originally took the position "that existing Clayton Act orders would become final within 60 days, under the new law, just as under the Wheeler-Lea Act . . . ." 356 F. 2d, at 257. See *Sperry Rand Corp.* v. *F. T. C.*, 110 U. S. App. D. C. 1, 288 F. 2d 403 (1961); *F. T. C.* v. *Nash-Finch Co.*, 110 U. S. App. D. C. 5, 288 F. 2d 407 (1961). From this, the court indicated that this change of position by the Commission pointed up its conclusion that "the repeal in this case was express." 356 F. 2d, at 257.

## III.

We cannot agree. One error of the Court of Appeals seems to be the limited scope it gives the phrase *"proceeding* initiated before the date of enactment of this Act." (Emphasis supplied.) The Court of Appeals thought this included only the *application* for enforcement under paragraph three or the *petition for review* under paragraph four of the original § 11 of the Act. We think not. We believe the word "proceeding" was used in the sense that it was employed throughout § 11 prior to the Amendment, namely the action brought by the Commission against the alleged violator of the Clayton Act. It follows that the "proceeding initiated" meant the filing of the "proceeding" before the Commission and was not limited to the application for enforcement or petition for review. This is made clear to us by the last sentence of § 2: "Each such proceeding shall be governed by the provisions of such *section* [§ 11 of the Clayton Act] as they existed on the day preceding the date of enactment of this Act." We emphasize that here the Congress said "section," not paragraphs 3–7, inclusive, of the section. It follows that the provisions of the entire section were preserved intact and governed all orders predating the Finality Act. The apparent reason for this variance from the procedure of the Wheeler-Lea Act was because of the heavy penalties which the Congress attached to the violation of final orders of the Commission under the Finality Act.[2] It, therefore, wished to make clear that not only applications for enforcement of pre-Finality Act orders and petitions for review of such orders but any action of the Commission with reference to pre-Finality Act orders would be governed by the provisions of § 11 of the Clayton Act "as they existed on the day

---

[2] The penalties were raised to $5,000 for each day in which a violation continued.

preceding the date of enactment of this [Finality] Act." We believe that this interpretation is implicit in our opinion on the second review by this Court of *Federal Trade Comm'n* v. *Henry Broch & Co.*, 368 U. S. 360 (1962), where Mr. Justice Brennan held that the 1959 amendments to § 11 of the Clayton Act "do not apply to enforcement of the instant order." At 365. In note 5, on p. 365, the opinion pointed out that the order "was entered by the Commission on December 10, 1957. The procedures enacted by the 1959 amendments therefore do not apply to it. See *Sperry Rand Corp.* v. *Federal Trade Comm'n*, 110 U. S. App. D. C. 1, 288 F. 2d 403." It is significant that *Sperry Rand* specifically held that "[e]nforcement due to any violation of the [pre-Finality Act] consent order which might occur is left to the provisions of the statute as they existed at the time the order was entered." At 4, 288 F. 2d, at 406. Such a holding here is supported by the fact that the Finality Act nowhere denies the Commission the power to enforce preexisting orders. At most its provisions are silent with regard to such authority. Furthermore, the caption of the Finality Act itself as well as the legislative history gives added weight to our interpretation. The caption recites the purpose of the Act to be "to provide for the more expeditious enforcement of cease and desist orders . . . ." 73 Stat. 243. Such a purpose would certainly not include making approximately 400 orders dead letters. As we have noted previously the legislative history shows beyond contradiction that not only its sponsors but the responsible committees reporting the bill for passage believed "that this legislation will strengthen the enforcement provisions of section 11 of the Clayton Act . . . ." S. Rep. No. 83, *supra*, at 3. Giving some 400 proven violators absolution from prior orders of the Commission would hardly comport with such a congressional intent. The Court of Appeals bottomed its opinion on the language used in the opening sentence of

subsection (c) of the Finality Act reading that the "third, fourth, fifth, sixth, and seventh paragraphs of" § 11 of the Clayton Act "are amended to read as follows." But we must read the Act as a whole as we have § 2 heretofore. And in so doing we cannot, as Mr. Justice Douglas said, ignore the "common sense, precedent, and legislative history" of the setting that gave it birth. *United States v. Standard Oil Co.,* 384 U. S. 224, 225 (1966). And as Mr. Justice Holmes said many years ago:

> "The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed. The major premise of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." *Johnson v. United States,* 163 F. 30, 32 (1908).

But whether or not we are correct in our application and interpretation we have concluded that a sensible construction of the Finality Act compels the opposite result to that reached by the Court of Appeals. That court would grant review and enforcement of proceedings under the old procedures where the petition for review or the application for enforcement was filed prior to the date of the enactment of the Finality Act but orders from which no petition or application was ever filed would not be capable of enforcement. This would subject violators who sought review to the sanctions of the section but those who had not sought review would be free to violate orders against them with impunity. Consequently, almost 400 separate violators would be forgiven. It is no answer to say that the Commission could file new complaints which would come under the new procedures.

The fact is that some 400 particularized orders written to correct specific mischief violative of the Clayton Act would be unenforceable. There is quite a difference between proving a violation of the Clayton Act and a failure to obey a specific order of the Commission. Long, tedious, and costly investigation, proof of injury to competition as well as other affirmative requirements necessary to the issuance of an order and many defenses such as cost justification, meeting competition, exclusive dealing, etc., are all avoided. Particularly in merger cases would the enforcement of prior orders be simplified and expedited.

In view of all of these considerations we cannot say that the author of the Finality Act and its sponsors—all stalwart champions of effective antitrust enforcement—would have intended to strip the Commission of all of its enforcement weapons with reference to some 400 concerns already adjudged to be Clayton Act violators. Nor could we ascribe to a Congress that has so clearly expressed its will any such result. We can only say that as between choices Congress rejected only one, namely, that of the Wheeler-Lea Act's 60-day review provision. Certainly it intended that the old procedures would apply to proceedings on petition for review or application for enforcement. There is no evidence that it intended to put the pre-1959 orders into the discard. We remain more faithful to the Act, we think, when we find that they too are enforceable under the old procedures.

*Reversed and remanded.*

MR. JUSTICE HARLAN, concurring.

While I confess to great difficulty in driving through the statute to the Court's conclusion, I am content to acquiesce in my Brother CLARK's opinion with the added help of the Second Circuit's opinion in *F. T. C.* v. *Standard Motor Products, Inc.,* 371 F. 2d 613.