**PUREX CORPORATION, LTD., a corporation, Plaintiff,**

v.

**The PROCTER & GAMBLE COMPANY, a corporation, and the Clorox Company, a corporation, Defendants.**

No. 67–1546.

United States District Court
C. D. California.

Jan. 22, 1970.

As Amended Jan. 28, 1970.

J. Swenson, Los Angeles, Cal., for plaintiff.

McCutchen, Black, Verleger & Shea, Philip K. Verleger, Los Angeles, Cal., Covington & Burling, Daniel M. Gribbon, Washington, D. C., for defendants.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM P. GRAY, District Judge.

The present action is for treble damages of more than five hundred million dollars, sought pursuant to section 4 of the Clayton Act (15 U.S.C. § 15) and arising out of the acquisition and retention by defendant Procter & Gamble (Procter) of the Clorox Chemical Company (Clorox) in 1957, the alleged effect of which has been "substantially to lessen competition * * * [and] to tend to create a monopoly," in violation of section 7 of the Clayton Act (15 U.S.C. § 18).[1] Prior to the filing of the complaint in this action, the Federal Trade Commission, after extensive hearings, ruled that such acquisition had been in violation of section 7, and ordered divestiture. (In re The Procter & Gamble Co., 63 F.T.C. 1585 (1963)). The Court of Appeals reversed (358 F.2d 74 (6th Cir. 1966)), and was in turn reversed by the Supreme Court, which directed that the order of the Commission be affirmed and enforced. (386 U.S. 568, 87 S.Ct. 1224, 18 L.Ed.2d 303 (1967)).

The parties to this action have filed and argued motions which require a determination by this court of the extent to which, if at all, the hereinabove mentioned Commission order may be of support to Purex's damage claim. More particularly, the defendant Proctor seeks a ruling that the divestment order by the Commission, as affirmed by the Supreme Court, was not a "final judgment or decree" within the meaning of section 5(a) of the Clayton Act (15 U.S.C. §

Gibson, Dunn & Crutcher, Julian O. Von Kalinowski, Robert E. Cooper, John

1. The complaint also charges Procter and defendant Clorox Company (Procter's wholly owned subsidiary to whom the Clorox assets were transferred) with conspiracy to restrain trade and to obtain a monopoly in interstate commerce in violation of sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2).

16(a)),[2] and that such section therefore does not require that the Commission order be received in this action as *prima facie* evidence that Procter's acquisition of Clorox violated the antitrust laws of the United States.

The plaintiff, on the other hand, not only urges that section 5(a) *does* apply to the Commission order, but goes farther and contends, as a preferred alternative, that such order conclusively settles the issue of Procter's violation of section 7, under the common law principle of collateral estoppel.

 It is the conclusion of this court that the divestment order issued by the Commission is a "final judgment or decree" within the meaning of section 5(a) and therefore is admissible as *prima facie* evidence in this litigation to the extent provided by that section. It is also concluded that the common law principle of collateral estoppel does not serve here to increase the effect of the Commission order beyond that accorded by section 5(a).

### The Admissibility Of A Final Commission Order

The Supreme Court, in Minnesota Mining and Mfg. Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965) (*3M*), construed section 5(b) of the Clayton Act (15 U.S.C. § 16(b)), and found that its provisions (which pertain to the tolling of the statute of limitations) apply to proceedings of the Federal Trade Commission. The opinion made several observations pertinent to an interpretation of the closely related section 5(a), but specifically refrained from asserting any conclusion as to the applicability of section 5(a) to Commis-

sion orders. After the *3M* decision, and until December 10, 1969, no reported decision gave direct consideration to the problem here concerned. Accordingly, the excellent briefs directed to the current issue were submitted on the then valid assumption that this court would be making the first post-*3M* attempt to reach a decision on this important issue, and the same thought influenced most of the preparatory work for this memorandum.

However, on December 10, 1969, there was published a decision in Farmington Dowel Products Co. v. Forster Mfg. Co., Inc., 421 F.2d 61 (1st Cir. 1969) (Antitrust and Trade Regulation Report, 12/16/69, page X–1). The opinion by Judge Coffin, speaking for a unanimous court, disclosed a careful study of the legislative history of section 5(a); discussed the few judicial decisions pertinent to that statute; traced the evolution of the Commission's responsibilities, powers, activities, and rules of practice; and concluded that section 5(a) is applicable to final orders of the Commission.

Inasmuch as I agree with the conclusion reached by Judge Coffin and, in most respects, with his reasons therefor, the length of this memorandum has been considerably reduced. Instead of attempting to set out in full the basis for each step in my own analysis, I shall, for the most part, simply state the general proposition and incorporate by reference Judge Coffin's explanations in justification thereof.

*The Commission proceeding was a "civil or criminal proceeding brought by or on behalf of the United States."* In order for section 5(a) to be applicable, the Commission proceeding resulting in

2. "A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title."

the order here concerned must have been a "civil or criminal proceeding brought by or on behalf of the United States * * *." Substantially the very same words are used in section 5(b) to describe the type of proceeding to which that statutory provision applies.[3] *3M* held that section 5(b) is applicable to Commission proceedings. In the absence of any apparent reason why the same words should be given different meanings in the two closely related sections, it is concluded that *3M* established that a Commission proceeding is a civil or criminal proceeding brought by the United States, within the meaning of section 5(a) as well as section 5(b). Farmington Dowel Products Co. v. Forster Mfg. Co., Inc., 421 F.2d 61 (1st Cir. 1969) (Antitrust and Trade Regulation Report, 12/16/69, page X–1).

*The Commission order was a "judgment or decree," within the meaning of section 5(a).* The opinion in *Farmington* acknowledged that from a semantic standpoint these words "referred only, or chiefly, to courts." Judge Coffin recognized also that those who participated in the congressional debates that preceded the enactment of section 5(a) were doubtless thinking of courts as being the sources of the judgments that would be used as evidence in subsequent litigation. However, from his review of those debates, he concluded that Congress had displayed no intention to preclude the possibility of a Commission order being given the effect that section 5(a) prescribed for a judgment or decree. He inferred, instead, that the principal concern of Congress in this respect was to make sure that section 5(a) effect be given only as a result of a proceeding that had been fairly conducted and in which there had been accorded a full opportunity to be heard.

The opinion in *Farmington* then proceeded to discuss the evolution of the responsibilities, powers, activities, and rules of practice of the Commission, and, in light thereof, expressed the belief that

"* * * the legislative concern that the defendant get a 'day in court' before section 5(a) operates against him is fully satisfied by a Federal Trade Commission proceeding." 421 F.2d 61 (1st Cir. 1969) (A.T.R.R., 12/16/69, page X–6).

This court agrees, and accordingly holds that the Commission order here concerned is a "judgment or decree", as that term is used in section 5(a).

*The Commission order is also "final".* Section 5(a) accords evidentiary effect only to a *final* judgment or decree. In 1959, Congress amended section 11 of the Clayton Act, thereby enacting legislation commonly and appropriately referred to as the Finality Act, 15 U.S.C. § 21, 73 Stat. 243. This amendment provides automatic finality to orders of the Commission upon expiration of the time allowed for filing a petition for review in the court of appeals (15 U.S.C. § 21(g) (1)). It also provides that such orders shall become final upon affirmance by the court of appeals or by the Supreme Court (subsections (g) (3) and (4)). The Finality Act thus gives significant indication of the congressional conviction that Commission orders are worthy of being enforced, even in the absence of judicial review thereof. That legislation also would settle the question

---

3. "Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued."

of the finality of the order here concerned, if it is applicable.

The answer to this question involves a matter of chronology. Section 2 of the Finality Act provided that the changes made in the law by that Act " * * * shall have no application to any proceeding initiated before the date of enactment of this Act [July 23, 1959] * * *." 73 Stat. 245. The Commission proceedings began with the filing of the complaint, in 1957, well before the adoption of the Finality Act; but the divestiture order came much later, on November 26, 1963. The same sequence of events was present in the *Farmington* case, and the court there held that the Finality Act applies to post-1959 *orders*, irrespective of the date the proceedings were instituted. However, I am unable to agree with Judge Coffin (see footnote 25 of his opinion in *Farmington*) that F.T.C. v. Jantzen, Inc., 386 U.S. 228, 87 S.Ct. 998, 18 L.Ed.2d 11 (1967) does not stand in the way of such a result. In *Jantzen,* it seems to me that Justice Clark, in speaking for the Court, construed the Finality Act to mean that no part thereof shall have any application to any proceeding initiated by the Commission before its enactment, on July 23, 1959. It is quite true that *Jantzen* was concerned with the enforcement of a Commission order that *predated* the Finality Act. However, the words of the statute, and the analysis made of them in the *Jantzen* opinion, indicate quite clearly to me that the Commission proceedings here concerned are not affected by the Finality Act.

Nonetheless, in the opinion of this court, the divestiture order with which we are concerned must be considered to have the finality required by section 5(a). The purpose of such requirement is necessarily to make certain that a "judgment or decree" later used against a defendant in a private damage suit is not one that may be reversed on appeal; it should be an order that may be relied upon as constituting the "last word", as far as the issues in the litigation that gave rise to it are concerned.

In this case, as is indicated above, the order of the Commission was reviewed by the court of appeals and by the Supreme Court. The latter tribunal, in an opinion by Justice Douglas, ruled that " * * * the Commission's findings were amply supported by the evidence" (386 U.S. at 570, 87 S.Ct. at 1226), and the opinion concluded with an order that the matter be remanded to the court of appeals " * * * with instructions to affirm and enforce the Commission's order." (386 U.S. at 581, 87 S.Ct. at 1231). I do not see how any Commission order could have more finality, for purposes of section 5(a), or otherwise.

The court of appeals' opinion in the *3M* litigation contained the following observation:

"While our 1914 legislators would not have accepted a bare FTC order of that period as admissible, the finality given such order through a decree emanating from the Court of Appeals would have resulted in its being considered a 'final judgment or decree', within Section 5(a)." New Jersey Wood Finishing Co. v. Minnesota Mining & Manufacturing Co., 332 F.2d 346, 358 (3d Cir. 1964), aff'd on other grounds, 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965).

In this case, the fact that affirmance was by the Supreme Court gives the quoted comment *a fortiori* application.

The defendants contend that to hold that affirmance by an appellate court may bestow upon a Commission order the section 5(a) finality that it would not otherwise merit, imposes an unconstitutional penalty upon the exercise of the right to judicial review. It is argued that such a holding would mean that an aggrieved defendant would appeal from an administrative order at the peril of having such order used later in imposing treble damages against him. In the context of the present situation, this court believes that the defendants' cries of pain are much louder than are warranted by the nature and extent of the wound.

It must be remembered that the issue of violation by the defendants of section 7 of the Clayton Act (15 U.S.C. § 18), i. e., whether the effect of the acquisition complained of *"may be* substantially to lessen competition, or to tend to create a monopoly" (emphasis added), was thoroughly and vigorously litigated before the Commission and before the court of appeals and the Supreme Court. The question here is whether the order that was issued and upheld after such exhaustive litigation must be ignored altogether in the present proceedings or whether it may be used simply as a relevant starting point. If the parties here were the same as those in the Commission proceedings, the facts implicit in the resulting order would be conclusive against the defendants, under the principle of *res judicata*. Here, under section 5(a), a new plaintiff may make use of such order, but only on a *prima facie* basis.

A comment in the opinion of the Court in Meeker v. Lehigh Valley R. Co., 236 U.S. 412, 430, 35 S.Ct. 328, 335, 59 L.Ed. 644 (1915) with respect to a comparable statute,[4] which makes certain orders of the Interstate Commerce Commission *prima facie* evidence in later actions, is equally pertinent here:

> "This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents. Nor does it in anywise work a denial of due process of law. \* \* \* Such statutes have been generally sustained[,] \* \* \* as have many other state and Federal enactments establishing other rebuttable presumptions."

It is readily recognized, as the defendants contend, that the right to judicial review may not be curtailed or discouraged by the imposition of severe or unreasonable penalties upon the exercise of such right. However, in view of all of the foregoing, this court is unable to conclude that the application of section 5(a) to the Commission order because it was affirmed by the Supreme Court, unreasonably penalizes the defendants.

Accordingly, it is adjudged that the Commission order of November 26, 1963, is a final judgment or decree within the meaning of section 5(a), and it will be given in these proceedings the evidentiary effect required by that statute.

*The Principle Of Collateral Estoppel Does Not Enlarge The Section 5(a) Significance Of The Commission Order.*

According to section 5(a), the Commission order must be admitted in this case as *prima facie* evidence as to all matters respecting which the order would be an estoppel against Procter had this action been brought by the Government. In referring to section 5(a), Justice Clark said in Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 568, 71 S.Ct. 408, 413–414, 95 L.Ed. 534 (1951):

> "We think that Congress intended to confer, subject only to a defendant's enjoyment of its day in court against a new party, as large an advantage as the estoppel doctrine would afford had the Government brought suit."

The reference to this benefit of estoppel as being conferred "subject only to a defendant's enjoyment of its day in court against a new party," clearly refers to the fact that the judgment or decree is admissible only as *prima facie* evidence, according to the explicit words of the statute.

But application here on the principle of collateral estoppel, as urged by the plaintiff, would mean that the Commission order would be *conclusive* as to all matters to which it applied. The Commission order cannot be both *prima facie*

4. 25 Stat. 859 (1889), as amended, 49 U.S.C. § 16(2) (1964).

and conclusive; and, it having been determined that the statute applies, the statute must govern. Accordingly, the principle of collateral estoppel is adjudged not to be applicable to this case, and the defendants are not estopped to deny anything expressed or implied in the Commission order.

### *The Evidentiary Significance Of The Commission Order.*

Before concluding this memorandum, a word of caution is believed appropriate. Nothing in the foregoing is intended to contain any suggestion concerning this court's view as to how important the legal issue here decided is to the case at hand. The matter of the extent to which evidentiary use may be made of the Commission order is for another day. The plaintiff, at the appropriate time, will have the burden of showing wherein the Commission order and the factual findings upon which it was based are relevant, material and persuasive to the issues here to be tried. See Gottesman v. General Motors Corp., 414 F.2d 956, 961 (2d Cir. 1969).

### *Order Disposing Of Pending Motions*

For the reasons stated in this memorandum, it is ordered as follows:

(a) The defendants' motion for a ruling that the Commission order, described in paragraph 24 of the complaint herein, was not a "final judgment or decree * * * rendered in any civil or criminal proceeding brought by or on behalf of the United States", within the meaning of section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), is denied.

(b) The plaintiff's motion for an order that the findings of the Commission shall be accorded collateral estoppel effect against the defendants, is denied.

### *Certification For Immediate Appeal*

The issues here concerned raise important questions of law that have not been resolved by the Court of Appeals for this Circuit. In the opinion of this Court, the Order involves a controlling question of law as to which there is substantial ground for difference of opinion. In the opinion of this Court, an intermediate appeal from the Court's Order may materially advance the ultimate termination of the litigation. This certification is made pursuant to 28 U.S.C. § 1292(b), in the event that counsel for either side desire to appeal from the interlocutory orders herein contained.