**UNITED STATES of America, Plaintiff,**

v.

**JS&A GROUP, INC., et al., Defendants.**

**No. 81 C 4967.**

United States District Court,
N. D. Illinois, E. D.

April 26, 1982.

Dan K. Webb, U. S. Atty., Margaret C. Gordon, Asst. U. S. Atty., Chicago, Ill., Gerald C. Kell and Don O. Burley, Dept. of Justice, Washington, D. C., for plaintiff.

Victor E. Grimm, Bell, Boyd & Lloyd, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiff, the United States of America, acting upon the notification of the Federal Trade Commission ("FTC" or "Commission"), brought this action against defendants, JS&A Group, Inc. ("JS&A"), and Joseph Sugarman, alleging that they violated a trade regulation rule concerning mail order merchandise ("mail order rule"), 16 C.F.R. § 435, promulgated by the FTC. Essentially, the complaint alleges that defendants solicited and processed orders for the sale of mail order merchandise in such a manner as to constitute an unfair or deceptive trade practice in violation of the mail order rule. Plaintiff seeks to recover civil penalties pursuant to 15 U.S.C. § 45(m)(1)(A) for the past violations and to

obtain permanent injunctive relief against future violations. Currently before the court is defendants' motion to dismiss.

Defendants' motion is based on the claim that the FTC is not entitled to seek the two remedies that it requests in its complaint but rather is limited to seeking a cease and desist order in an administrative proceeding against violations of the mail order rule. Because the court believes that defendants' arguments concerning the civil penalties provision are the more significant, they will be considered first.

Prior to the enactment of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act ("Magnuson-Moss Act"), 88 Stat. 2183, which was effective on January 4, 1975, FTC enforcement of its substantive rules was limited to administrative proceedings in which the FTC was empowered to issue cease and desist orders prohibiting future rule violations. The FTC did not have the authority to directly impose fines or penalties for violations, or to seek them in the district courts.

Congress, in 1974, passed the Magnuson-Moss Act for the purpose of, *inter alia,* "provid[ing] the Federal Trade Commission (FTC) with means of better protecting consumers." H.R.Rep.No. 93–1107, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7702, 7702. For the first time, the FTC was expressly granted the authority to issue substantive rules.[1] As part of that authority, Congress included Section 202(a) of the Magnuson-Moss Act, which set up a more stringent method of rule-making than that contemplated by the general provisions of the Administrative Procedure Act ("APA"). Among other things, the Magnu-

son-Moss Act requires the FTC to make a more detailed notice of rule-making than it would under the APA, to hold an oral hearing where interested persons may present their evidence and conduct cross-examination, and to provide compensation for attorneys' fees and other costs to people who represent interests at the rule-making that would not otherwise be fairly represented. Also, the Magnuson-Moss Act provides for a more stringent judicial review of the factual basis underlying an FTC rule than does the APA.

In addition to setting up this new rule-making structure for FTC substantive rules, the Magnuson-Moss Act also provided new methods of enforcing the rules. Chief among the new enforcement mechanisms is Section 205(m)(1)(A) of the Act, 15 U.S.C. § 45(m)(1)(A). That provision states in relevant part:

> "The Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person, partnership, or corporation which violates any rule under this chapter respecting unfair or deceptive acts or practices ... with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule. In such action, such person, partnership, or corporation shall be liable for a civil penalty of not more than $10,000 for each violation."

Such civil penalties had previously been available for violations of a final cease and desist order; however, they could not be used to directly enforce a substantive rule.

1. Before passage of the Magnuson-Moss Act, the FTC relied on Section 6(g) of the FTC Act (15 U.S.C. § 46(g)) for its authority to issue substantive rules. In their initial memorandum in support of their motion to dismiss, defendants note that it was long believed, by commentators and the FTC itself, that Section 6(g) only provided for procedural rules and did not authorize the FTC to issue substantive rules. Consequently, defendants suggest that the mail order rule is invalid. The issue raised by defendants was laid to rest, however, in the case of *National Petroleum Refiners Ass'n. v. FTC,*

482 F.2d 672 (D.C.Cir.1973), *cert. denied,* 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974). There, the Court of Appeals carefully considered the statutory history of the FTC Act, and concluded that the FTC did have the power to validly promulgate substantive rules. Defendants have failed to suggest any persuasive reason why this court should not follow the National Petroleum decision. Therefore, the court finds that the mail order rule is valid. The question of what mechanism may be used by the FTC to enforce the rule still remains.

The procedures leading up to the promulgation of the FTC's mail order rule were conducted before the Magnuson-Moss Act was adopted. All that remained after the effective date of the Act was the final announcement of the rule in the Federal Register, which was done on October 22, 1975, and publication of the statement of basis and purpose on November 5, 1975. In considering the rule, the FTC followed the procedures outlined in the APA, and did not follow the more stringent procedures of the Magnuson-Moss Act, which, of course, had not yet been enacted.

█ Defendants' position in their motion to dismiss is that, because the mail order rule proceedings were conducted prior to the adoption of the Magnuson-Moss Act and so did not follow the new stringent procedures provided by Congress, violations of the rule should not subject the defendants to the new penalties provided by that Act. Defendants' argument requires the court to consider the effect and purpose of three statutory provisions included in the Magnuson-Moss Act in an attempt to divine Congress' intent.[2]

As an initial response, the FTC argues that the civil penalty section is clear on its face. Section 205(a) of the Magnuson-Moss Act allows the FTC to recover civil penalties for violations of "*any* rule under this Act" (emphasis added). Focusing on the phrase "any rule," the FTC suggests that Congress intended the civil penalty provision to apply to rules promulgated before the Magnuson-Moss Act was passed, as well as rules promulgated thereafter. The FTC's position is supported in an article written by an attorney on leave from the Commission, where the author states, "Section 5(m)(1)(A) clearly imposes civil liability for violations of 'any' Commission trade regulation rule, whether adopted before or after January 4, 1975, the effective date of the Magnuson-Moss Act." Bickart, *Civil Penalties under Section 5(m) of the Federal Trade Commission Act*, 44 U.Chi.L.Rev. 761, 770 (1977).

The court is unable to accept that argument put forth by the FTC. It appears that, on this point, the Magnuson-Moss Act is ambiguous. When Congress refers to "any rule under this Act," it is not at all clear whether the act referred to is the Federal Trade Commission Act as a whole, or only the Magnuson-Moss Act. Nor does the quite sparse legislative history of the civil penalty provision itself provide any clues to how that ambiguity should be resolved.

Defendants argue that the legislative history of the Magnuson-Moss Act, as a whole, requires the court to find that Congress did not intend the civil penalty provision to apply to rules promulgated before the Act was passed. Defendants point particularly to Congress' concern about the procedures followed by the FTC in rule-making:

"Because of the potentially pervasive and deep effect of rules defining what constitutes unfair or deceptive acts or practices and the broad standards which are set by the words 'unfair or deceptive acts or practices', the committee believes greater procedural safeguards are necessary. Accordingly, it has fashioned the rulemaking procedures and judicial review provisions described below which we believe to be more appropriate in this context than merely relying upon the provisions of sections 553 and 706 of title 5 [the APA]."

H.R.Rep.No. 93–1107, *supra*, at 7727. Defendants contend that it would be unfair to apply the harsh civil penalties to rules promulgated under the less stringent requirements of the APA, and that it would substantially emasculate the new requirements if old rules had the same effect as the new ones.

Though Congress was concerned about the procedures used by the FTC in promulgating its earlier substantive rules, it did not regard those rules to be any less valid,

---

**2.** One other district court has discussed the question raised in this case. *See United States v. Hertz Corp.*, 1981–1 Trade Reg.Rep. (CCH) ¶ 64,023 (S.D.Fla.1981). Because it is apparent that all the arguments made by defendants here were not considered in that case, the court will expand on the reasoning in *Hertz*.

however. As part of Section 202 of the Magnuson-Moss Act, Congress addressed the issue of the validity of the FTC rules already in effect and those about to go into effect.

"(c)(1) The amendments made by subsections (a) and (b) [the new rulemaking procedures] of this section shall not affect the validity of any rule which was promulgated under section 6(g) of the Federal Trade Commission Act prior to the date of enactment of this section. Any proposed rule under section 6(g) of such Act with respect to which presentation of data, views, and arguments was substantially completed before such date may be promulgated in the same manner and with the same validity as such rule could have been promulgated had this section not been enacted."

The parties here do not dispute that the mail order rule properly fits into the second category recognized by Congress in that subsection, and so was not rendered invalid by the new rule-making procedures. *See United States v. Braswell, Inc.,* 1981–2 Trade Reg.Rep. (CCH) ¶ 64,325 (N.D.Ga. Sept. 28, 1981).

It appears from the above "savings provision" that Congress did intend the civil penalties to apply to violations of the pre-Magnuson-Moss Act rules. Defendants suggest that the court should interpret the phrase "with the same validity as such rule could have been promulgated had this section not been enacted" to mean that all provisions of the Magnuson-Moss Act should not apply to the old rules, including the civil penalty provision. Congress was careful, however, to only exempt the old rules from the requirements in Section 202 of the Act. There is nothing in the savings provision or its legislative history to indicate that the civil penalty provisions in Section 205 were also excluded. Nor is there any indication that Congress intended to create a two-tiered system of rules with different enforcement mechanisms, as defendants suggest.

Other aspects of the Magnuson-Moss Act and its legislative history support the infer-

ence that Congress intended that old rules like the mail order rule would be enforced by civil penalties, rather than only by cease and desist orders. Though there is no question that Congress, at the time the Magnuson-Moss Act was passed, was concerned about the procedures used by the FTC in promulgating its substantive rules, Congress also indicated its displeasure at the ineffectiveness of using cease and desist orders to enforce the rules.

"Notwithstanding the 1938 amendments, the Wheeler-Lea Act, the FTC continued to be hampered as an effective force in promoting fair and free competition and safeguarding the consuming public against unfair or deceptive acts or practices by the scope of its authority being limited to matters 'in commerce' and by being made to rely solely on the cease and desist order procedure for enforcement."

H.R.Rep.No. 93–1107, *supra,* at 7712. In the absence of any clear statements to the contrary, it would be incongruous to assume that Congress wished the FTC to continue to be hampered by what it expressly considered to be an ineffective enforcement mechanism.

█ And finally, when Congress did turn its attention to the question of whether the civil penalty provision would apply retroactively, it enacted the following provision:

"(b) The amendment made by subsection (a) of this section [the civil penalty provision] shall not apply to any violation, act, or practice to the extent that such violation, act, or practice occurred before the date of enactment of this Act."

Magnuson-Moss Act, § 205(b). This provision speaks in terms of the time of the violation, not in terms of when the particular rule that was violated was promulgated. In fact, if defendants' position is correct, that section of the Magnuson-Moss Act is largely stripped of all meaning. By definition, there could be no rule violations before the enactment date, if there were no rules at that time to which the civil penalty provision applied. Constructions which render language passed by Congress meaningless are not favored.

In addition to their arguments based on the language and history of the Magnuson-Moss Act, defendants also claim that their position is supported by general legal doctrine. First, defendants argue that applying the civil penalties to rules promulgated before the Act was passed would result in the Act being enforced retrospectively and that such constructions are not favored. And second, defendants suggest that this court follow the reasoning of the cases under the Finality Act of 1959 and hold that the civil penalty provision does not apply to the mail order rule. Neither of defendants' arguments is persuasive.

The cases cited by defendants in support of their proposition that retrospective constructions of punitive statutes are to be avoided, *U. S. Fidelity Co. v. Struthers Wells Co.,* 209 U.S. 306, 28 S.Ct. 537, 52 L.Ed. 804 (1908), and *South East Chicago Commission v. Department of Housing and Urban Development,* 488 F.2d 1119 (7th Cir. 1973), involve the application of statutes to conduct undertaken before the effective dates of the relevant statutes. Here, the conduct under attack by the FTC is defendants' alleged violations of the mail order rule. All violations that are the subject of the instant litigation took place well after the Magnuson-Moss Act was enacted. Consequently, this case involves a prospective application of the civil penalty provision, not a retrospective one. Therefore, defendants' argument is irrelevant.

Also largely irrelevant is defendants' argument based on the Finality Act cases, *FTC v. Jantzen, Inc.,* 386 U.S. 228, 87 S.Ct. 998, 18 L.Ed.2d 11 (1966), and *FTC v. Broch & Co.,* 368 U.S. 360, 82 S.Ct. 431, 7 L.Ed.2d 353 (1962). The Finality Act provided civil penalties for violations of certain FTC cease and desist orders. In the two cases cited, the Supreme Court noted that the FTC was not authorized to seek civil penalties for violations of cease and desist orders entered before the Finality Act was passed. That conclusion, however, was not based on any general proposition that Congress could not apply civil penalties to future violations of a previously adopted FTC rule or order, but rather on the fact that Congress expressly

provided that civil penalties would not apply to the earlier cease and desist orders. The following provision was part of the Finality Act:

"The amendments made by section 1 have no application to any proceeding initiated before the date of enactment of this Act under the third or fourth paragraph of section 11 of the [Clayton] Act. . . . Each such proceeding shall be governed by the provisions of such section as they existed on the day preceding the date of enactment of this Act."

*Jantzen,* 386 U.S. at 232, 87 S.Ct. at 1001. There is no analogous provision in the Magnuson-Moss Act.

In fact, if the Finality Act cases are relevant to the instant dispute at all, they provide support for the proposition that Congress did intend the civil penalty provision to be applicable to violations of the mail order rule. In the Finality Act, Congress demonstrated that, if it did not mean for civil penalties to be applicable to FTC action taken before the penalty provision was passed, it was capable of making that intention perfectly clear. The fact that Congress did not include in the Magnuson-Moss Act a provision similar to that found in the Finality Act is some evidence that Congress did not intend for the courts to add such a provision by construction.

In sum, the court concludes that, to the extent Congressional intent is discernible, Congress intended that the FTC could enforce the mail order rule by bringing an action to recover civil penalties for violations. Defendants' motion to dismiss that part of plaintiff's complaint will be denied.

▮ Defendants have also moved to dismiss plaintiff's request to obtain permanent injunctive relief against future violations of the mail order rule. Defendants essentially argue that the FTC is not legally authorized to seek a permanent injunction against rule violations.

It appears, however, that the FTC is authorized to seek permanent injunctive relief, in those cases where it is warranted, under 15 U.S.C. § 53(b). That subsection

provides, *inter alia,* that the FTC may seek a preliminary injunction, pending consideration of a complaint filed before the Commission. The subsection then continues as follows:

"*Provided further,* That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction."

*Id.* By its terms, that statute appears to give the FTC authority to seek a permanent injunction in all cases in which it believes that it can prove the necessary facts, irrespective of the pendency of an administrative complaint. Three other district courts have so held. *See United States v. National Dynamics Corp.,* 525 F.Supp. 380 (S.D.N.Y.1981); *FTC v. Virginia Homes Manufacturing Corp.,* 509 F.Supp. 51 (D.Md.1981), *aff'd,* 661 F.2d 920 (4th Cir. 1981); *FTC v. Singer,* 534 F.Supp. 24 (N.D.Cal.1981). Defendants' arguments to the contrary are not persuasive.

For the reasons stated above, defendants JS&A and Sugarman's motion to dismiss is denied.