**INDEPENDENT INSURANCE AGENTS OF AMERICA, INC., et al., Appellants,**

v.

**Robert L. CLARKE, Comptroller of the Currency, et al.**

**NATIONAL ASSOCIATION OF LIFE UNDERWRITERS, et al., Appellants,**

v.

**Robert L. CLARKE, et al.**

**Nos. 90–5209, 90–5214.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 1, 1991.

Decided Feb. 7, 1992.

As Amended Feb. 25, 1992.

Jonathan B. Sallet, for appellants. Ann M. Kappler, Washington, D.C., also entered an appearance, for appellants.

Theodore C. Hirt, Atty., U.S. Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Jay B. Stephens, U.S. Atty., Anthony J. Steinmeyer, Atty., Dept. of Justice, and Lester W. Scoll, Atty., Office of Comptroller of Currency, Washington, D.C., were on brief, for appellee Clarke.

Kenneth L. Bachman, Jr., Giovanni P. Prezioso, and Marc C. Krantz, Washington, D.C., were on brief, for appellee U.S. Nat. Bank of Oregon.

John J. Gill and Michael F. Crotty, Washington, D.C., were on brief, for amici curiae American Bankers Ass'n and Oregon Bankers Ass'n, urging affirmance.

Before SILBERMAN, BUCKLEY and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

Dissenting opinion filed by Circuit Judge SILBERMAN.

BUCKLEY, Circuit Judge:

Appellants challenge a ruling by the Comptroller of the Currency that would permit any national bank, or its branch, located in a community of not more than five thousand inhabitants to sell insurance to customers outside that community. The Comptroller based his ruling on section 92 of the National Bank Act. As we find *sua sponte* that that section has been repealed, and as the Comptroller cites no alternative authority for his ruling, we reverse.

## I. BACKGROUND

Section 92 was enacted in 1916 as an amendment to section 5202 of the Revised Statutes of the United States. It provided, in relevant part, that any national bank

located and doing business in any place the population of which does not exceed five thousand inhabitants … may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, act as the agent for any … insurance company authorized by the authorities of the State in which said bank is located to do business in said State.

39 Stat. 750, 753 (1916). This provision was codified as section 92 of Title 12 of the United States Code. Although section 92 was omitted from section 5202 when the latter was revised and reenacted in 1918, and although the section has been omitted from recent editions of the United States Code, the Comptroller has continued to treat it as valid. *See, e.g.,* 12 C.F.R. § 7.7100 (1991).

The appellant trade associations, which represent insurance agents and underwriters, challenge a ruling by the Comptroller that is based on section 92. The ruling holds that under that statute, "a national bank or its branch which is located in a place of 5,000 or under population may sell insurance to existing and potential customers located anywhere." Letter from Judith A. Walter, Senior Deputy Comptroller for National Operations, to Mr. T. Dalrymple (Aug. 18, 1986), *reprinted in* Joint Appendix at 65. Appellants assert that section 92 places a geographical limit on such sales; and they brought this action to have the ruling set aside under the APA as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A) (1988), as a national bank is not permitted to engage in any activity that is not specifically authorized by law. *See* 12 U.S.C. § 24 (1988).

The district court granted the Comptroller's motion for summary judgment based on its finding that his interpretation of section 92 was "rational and consistent with the statute." *National Ass'n of Life Underwriters v. Clarke,* 736 F.Supp. 1162, 1173 (D.D.C.1990) (internal quotation marks omitted). Although the court noted "that [section 92] no longer appears in the United States Code," it stated that it would "assume that the statute exists *in proprio*

*vigore*" because "Congress, other courts, and the Comptroller have presumed its continuing validity." *Id.* at 1163 n. 2 (citations omitted). The court cited no other source of authority for the Comptroller's ruling; nor does the Comptroller claim any.

After the parties had submitted their appellate briefs, we asked them to address two questions: First, should this court decide the validity of section 92 in the absence of a challenge to that validity by any of the parties? Second, was section 92 in fact valid? In response to the first question, appellants took the position that this court was required to consider the validity of section 92 as it "would be without constitutional authority or power to render [a decision on the merits] if Section 92 [did] not exist." Supplemental Brief for Appellants at 3. The Comptroller, on the other hand, argued that it would be inappropriate for the court to address the issue: It had not been raised by the parties; and, in any event, "the legal issue identified by the Court [did] not go to its jurisdiction, but rather to the merits of plaintiffs' claims." Supplemental Brief for Federal Appellees at 5.

In responding to our second question, the parties agreed that section 92 remains in effect. They argue that Congress did not intend to repeal section 92. Its technical deletion, they claim, was the result of misplaced quotation marks and therefore should be ignored; moreover, as section 92 was unrelated to the purposes of the 1918 revision of section 5202, an intention to repeal it should not be imputed to Congress. Finally, the parties claim that subsequent action by Congress, the Comptroller, and the federal courts (including the Supreme Court) confirms that section 92 remains in effect.

For the reasons set forth below, we conclude that we must decide whether section 92 continues to have the force of law; and because we find it does not, we reverse.

## II. DISCUSSION

### A. Should the court decide section 92's validity?

The role of the judicial branch is a limited one.

The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.

*Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983) (Scalia, J.). On occasion, however, a court will find it necessary to go beyond the specific legal theories advanced by the parties. In *Arcadia, Ohio v. Ohio Power Co.,* — U.S. —, 111 S.Ct. 415, 112 L.Ed.2d 374 (1990), for example, the parties agreed that the case depended on the proper application of section 318 of the Federal Power Act. The Supreme Court concluded, however, that the challenged orders did not fall within the scope of that section, and it disposed of the case on another basis. *Id.* at 111 S.Ct. 418. *See also Kamen v. Kemper Financial Services, Inc.,* — U.S. —, 111 S.Ct. 1711, 1718, 114 L.Ed.2d 152 (1991) ("court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law"). Moreover, federal courts "are not bound to accept, as controlling, stipulations as to questions of law." *Estate of Sanford v. Commissioner of Internal Revenue,* 308 U.S. 39, 51, 60 S.Ct. 51, 59, 84 L.Ed. 20 (1939); *see also Sebold v. Sebold,* 444 F.2d 864, 870 n. 8 (D.C.Cir.1971) ("Since this is a question of law, ... the agreement of counsel is not binding on this court."). The Supreme Court has also held that a court must take judicial notice of a state law that is invalid, stating that "on general principles, the question as to the existence of a law is a judicial one, and must be so regarded by the courts of the United States." *Town of South Ottawa v. Perkins,* 94 U.S. 260, 268, 24 L.Ed. 154 (1876).

We believe that this is one of those occasions where a court may properly dispose of a case on a basis not advanced by the parties. Here, the legal question we are asked to decide is the geographical reach of section 92. We are on notice,

however, that the section no longer appears in the United States Code. That fact gives rise to a statutory presumption that the law invoked by the parties is invalid, *see* 1 U.S.C. § 204(a) (1988), a presumption that the parties have been given ample opportunity to rebut. Because this controversy hangs on the interpretation of a statute that is presumed not to exist, we not only have the right to inquire into its validity, we have the duty to do so.

### B. Is section 92 valid?

■ Section 204(a) of Title 1 of the United States Code states:

The matter set forth in the edition of the Code of Laws of the United States current at any time shall ... establish prima facie the laws of the United States, general and permanent in their nature.

Therefore, in order to determine whether section 92 is valid, we first consult the Code. On inspecting 12 U.S.C. § 92 (1988), we find the following:

### § 92. Omitted

#### Codification

The provisions of this section, which authorized national banking associations in any place where the population did not exceed 5,000 to act as an insurance agent or real estate broker, were added to R.S. § 5202 by act Sept. 7, 1916, were omitted in the amendment of R.S. § 5202 by act Apr. 5, 1918, and therefore this section was omitted from the Code. Pub.L. 97–320, Oct. 15, 1982, purported to amend the Act of September 7, 1916 by deleting [two provisions]. R.S. § 5202, as amended, was set out as section 82 of this title prior to repeal by Pub.L. 97–320.

12 U.S.C. § 92 (1988) (citations omitted). In sum, the codifiers treat section 92 as having been repealed in 1918.

Because we must look to the Code for *prima facie* evidence of federal law, its omission creates a presumption that section 92 does not exist. Still, other evidence may rebut that presumption; " 'the very meaning of "prima facie" is that the Code cannot prevail over the Statutes at Large

when the two are inconsistent.' " *United States v. Welden,* 377 U.S. 95, 98 n. 4, 84 S.Ct. 1082, 1085 n. 4, 12 L.Ed.2d 152 (1964) (quoting *Stephan v. United States,* 319 U.S. 423, 426, 63 S.Ct. 1135, 1136, 87 L.Ed. 1490 (1943) (per curiam)). We must therefore examine the text of the Statutes at Large to see whether they rebut the presumption that section 92 has been repealed.

#### 1. *The Statutes at Large*

The critical statutes are section 13 of the Federal Reserve Act of 1913, Pub.L. No. 63–43, § 13, 38 Stat. 251, 263–64 (1913) ("1913 Act"), the 1916 amendments to that Act, Pub.L. No. 64–270, 39 Stat. 752, 753 (1916) ("1916 amendments"), and section 20 of the War Finance Corporation Act of 1918, Pub.L. No. 65–121, § 20, 40 Stat. 506, 512 (1918) ("1918 Act"). The relevant provisions of these statutes will be found in appendices A, B, and C to this opinion.

As will be seen in Appendix A, section 5202 of the Revised Statutes of the United States, as amended by the 1913 Act, is to be found in the text of section 13 of that Act. The question raised by the parties is whether Congress, in 1916, intended to make the new section 92 a part of section 5202. The critical language in the 1916 amendments reads as follows:

Section fifty-two hundred and two of the Revised Statutes of the United States is hereby amended so as to read as follows: "No national banking association shall at any time be indebted, or in any way liable, to an amount exceeding....

\*    \*    \*    \*    \*    \*

"That in addition to the powers now vested by law in national banking associations ... located and doing business in any place the population of which does not exceed five thousand inhabitants ... may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, act as the agent for any fire, life, or other insurance company ... by soliciting and selling insurance and collecting premiums on policies issued by such company.... *And provided further,* That the bank shall not guarantee

the truth of any statement made by an assured in filing his application for insurance.

> "Any member bank may accept drafts or bills of exchange drawn upon it.... *Provided further,* That no member bank shall accept such drafts or bills in an amount exceeding at any time the aggregate of one-half of its paid-up and unimpaired capital and surplus."

The middle paragraph above would later be codified as 12 U.S.C. § 92. Thus, on its face, the 1916 amendments had the effect of placing section 92 within section 5202 of the Revised Statutes.

Two years later, Congress enacted the 1918 Act. Section 20 of that Act reads in part as follows:

> Sec. 20. Section fifty-two hundred and two of the Revised Statutes of the United States is hereby amended so as to read as follows:
>
> "Sec. 5202. No national banking association shall at any time ... except on account of demands of the nature following:
>
> "First. Notes of circulation.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> "Sixth. Liabilities incurred under the provisions of the War Finance Corporation Act."

Section 20, in short, sets forth between opening and closing quotation marks what appears as the entire text of the revised section 5202; and as a glance at Appendix C will confirm, the language of section 92 is not to be found in section 5202 as amended.

■ Under traditional rules of statutory construction, the meaning of section 92's omission is plain; material omitted on reenactment is deemed repealed. *See, e.g., Keppel v. Tiffin Savings Bank,* 197 U.S. 356, 373, 25 S.Ct. 443, 449, 49 L.Ed. 790 (1905) ("[I]t cannot in reason be said that the omission ... gives rise to the implication that it was the intention of Congress to reenact it."); 1A N. Singer, Sutherland Statutory Construction § 23.12, at 355 (4th rev. ed. 1985) ("When the amendatory act purports to set out the original act or section as amended ... all matter that is omit-ted in the act or section which the amendment purports to set out as amended, is considered repealed.") (footnotes omitted). Thus the language and punctuation of the Statutes at Large, traditionally construed, support the codifier's conclusion that section 92 was repealed by the 1918 Act.

#### 2. *Did Congress Intend to Repeal Section 92?*

The parties do not dispute the fact that section 92 cannot survive a literal reading of the 1916 and 1918 statutes. They argue, instead, that the section remains valid because Congress did not intend to repeal it. They make their statutory argument in two stages: First, they contend that the apparent deletion was the result of misplaced quotation marks in the 1916 amendments that had the effect of placing section 92 within section 5202 of the Revised Statutes instead of making it part of section 13 of the Federal Reserve Act. They then reason that as section 5202 as amended was not intended to include section 92, its omission from the subsequent revision of section 5202 should not effect a repeal.

They assert, specifically, that a quotation mark should not have appeared at the end of the paragraph marked [1] in Appendix B, and that the quotation mark now appearing after the first colon in paragraph [2] should have been placed at the beginning of that paragraph. Had section 20 been so punctuated, they say, it would be clear that section 5202 itself had not been amended to include the textually unrelated paragraphs marked [3], [4] (section 92), and [5]. Because a change of these quotation marks would make for greater textual consistency in the 1916 amendments, the parties argue that a mistake was made in the printing of the bill, and they cite cases in which courts have adjusted the punctuation of statutes in order to make sense of them. They conclude that the 1918 Act's revision of section 5202 did not delete section 92 because the latter could not properly be considered part of the former.

In support of their view of the 1916 amendments and their interaction with the

1918 Act, the parties direct our attention to a letter and memoranda submitted to the House Banking Committee in 1958 that also conclude that the inclusion of section 92 in section 5202 of the Revised Statutes was inadvertent, and that section 92 was therefore never repealed. *See Financial Institutions Act of 1957: Hearings on S. 1451 and H.R. 7026 Before the Comm. on Banking and Currency of the House of Representatives*, 85th Cong., 2d Sess. 1035, 1036 (1958) ("1958 Hearings") (letter from Comptroller asserting that Congress misplaced quotation marks and that section 92 "remain[s] in full force"); *id.* at 1036–40 (memorandum from Federal Reserve Board reaching same conclusion); *id.* at 1063–65 (Library of Congress's Legislative Reference Service reaching same conclusion); *id.* at 1065–71 (general counsel of Banking Committee reaching same conclusion).

This is an impressive array of witnesses, but the verdict is not unanimous. Committee member (and future chairman) Wright Patman was of the view that section 92 did not exist. *Id.* at 1062 (section 92 "was repealed in 1918"). Seven years later, the staff of a House Banking subcommittee, after examining the response of the Comptroller to a series of questions, would conclude that

> [w]hether or not the Congress ... [intended] to perpetuate 12 U.S.C. 92, cannot be ascertained. In any event, however, its intentions would not suffice to overcome the effect of the deletion of § 92 by the inclusion of § 20 in the Act of 1918.... Section 92 is non-existent.

*Consolidation of Bank Examining and Supervisory Functions, 1965: Hearings on H.R. 107 and H.R. 6885 before the Comm. on Banking and Currency of the House of Representatives, Subcomm. on Bank Supervision and Insurance*, 89th Cong., 1st Sess. 3, 391 (1965) ("1965 Hearings").

It seems to us that the subcommittee staff had its eyes on the right question; namely, on the effect of the 1918 Act. Whatever the intentions of the 64th Congress in 1916, they are essentially irrelevant to the task at hand. What we are

called upon to determine are the consequences of the action taken by the 65th Congress when, two years later, it voted the 1918 Act into law. Section 20 of that Act, which amended section 5202, originated as a floor amendment that was adopted without debate. *See* 1965 Hearings at 391. It seems fair to assume that in drafting section 20 and in voting to enact it, the author and interested members of the House and Senate would have sought out a current text of section 5202 to work from, and not relied on institutional memories of what the text was, or should have been.

At that time, there were only three sources to which they could turn for up-to-date information: the Statutes at Large, which reproduced section 5202's facially unambiguous language, or either of two privately published services. Each of these services reported that as a result of the 1916 amendments, section 5202 of the Revised Statutes contained the provisions to be found in the paragraphs marked [2] through [5] of Appendix B. *See* 9 U.S.Comp.Stat.Ann. § 9764 (West 1916) and 3 U.S.Stat.Ann. § 5202 (T.H. Flood & Co. 1916). Absent concrete evidence to the contrary, we must assume that the 65th Congress understood section 92 to be part of section 5202, and that its exclusion from the amended section 5202 signaled its repeal.

The Comptroller argues, however, that as the purpose of the War Finance Corporation Act of 1918 was to assist the financing of the war effort, a purpose that had no logical relationship to the insurance activities of small town banks, the traditional rule governing provisions omitted in the version of a statute should not be applied to this case. In support of this position, the Comptroller cites two cases interpreting the Clayton Finality Act of 1959, 73 Stat. 243 (1959), *F.T.C. v. Jantzen, Inc.*, 386 U.S. 228, 87 S.Ct. 998, 18 L.Ed.2d 11 (1967), and *F.T.C. v. Standard Motor Products, Inc.*, 371 F.2d 613 (2d Cir.1967), which conclude that "the rule that amendment 'to read as follows' repeals everything omitted ... must yield where [its] application would be inconsistent with the

purposes of the statute." *Standard Motor,* 371 F.2d at 617.

The inconsistency found in those two cases was one where the literal application of a statutory phrase in the Clayton Finality Act would have frustrated a clearly stated purpose of the amendment. Here, however, there is no inherent contradiction between the deletion of section 92 and facilitating the financing of the American war effort. The two are simply unrelated, and no one argues that the stated purpose of the 1918 Act would have been impeded by the section's repeal.

The Comptroller refers us to cases indicating that we have the authority to rectify Congress's apparent error: When "a mistake in draftsmanship is obvious, courts may remedy the mistake," *Symons v. Chrysler Corp. Loan Guarantee Bd.,* 670 F.2d 238, 242 (D.C.Cir.1981); in construing a statute, a court "will disregard the punctuation, or will repunctuate, if that be necessary, in order to arrive at the natural meaning of the words employed." *United States v. Shreveport Grain & Elevator Co.,* 287 U.S. 77, 82–83, 53 S.Ct. 42, 43–44, 77 L.Ed. 175 (1932). *See also Hammock v. Loan and Trust Co.,* 105 U.S. 77, 84–85, 26 L.Ed. 1111 (1881) (same). In each of these cases, the error distorted the meaning of a statute; where the putative error brings about the repeal of a statute, however, judicial correction entails a far graver task—a task that has generally been shouldered by the legislative branch. *See, e.g., Whitney v. State Tax Comm'n,* 309 U.S. 530, 535–37, 60 S.Ct. 635, 637–38, 84 L.Ed. 909 (1940) (New York legislature altered trust law and inadvertently immunized certain trusts from taxation; gap corrected by statute); *United States v. Riker,* 670 F.2d 987, 988 (11th Cir.1982) (Congress inadvertently repealed statute prohibiting possession of drugs aboard American ships at sea; gap corrected by statute).

### 3. *Subsequent treatment by Congress, the Comptroller, and the courts*

The parties argue, finally, that the subsequent treatment of section 92 by legislative, administrative, and judicial officials requires us to find that the provision is alive and well. First, they note that Congress in 1982 attempted to delete several provisions from section 92. *See* Garn–St. Germain Depository Institutions Act of 1982, Pub.L. No. 97–320, § 403(b), 96 Stat. 1469, 1510–11 (1982); *see also* S.Rep. No. 536, 97th Cong., 2d Sess. 60 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 3054, 3114 (section 403(b) is "a conforming amendment to 12 U.S.C. § 92, which deletes *existing* reference to the authority of national banks.") (emphasis added). Moreover, at the time the parties filed their supplemental briefs, Congress was considering legislation that, *inter alia,* would repeal section 92. *See* H.R. 6, 102nd Cong., 1st Sess. § 432 (1991). The parties contend that Congress would hardly seek to modify or repeal a statute that no longer existed.

What Congress may now believe, however, is irrelevant. "[I]t is well settled that the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Russello v. United States,* 464 U.S. 16, 26, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983) (internal quotation marks omitted). Section 92 was either repealed in 1918 or it was not; and for those same reasons, it is also immaterial that the Comptroller of the Currency has continued to treat the section as valid. Federal agencies have no authority to reinstate a statute that Congress has repealed.

In none of the cases cited by the parties has a court found that section 92 remains valid; rather, they have presumed that it does. *See, e.g., Independent Bankers Ass'n v. Heimann,* 613 F.2d 1164, 1170 & nn. 18–20 (D.C.Cir.1979); *Independent Ins. Agents of America, Inc. v. Board of Governors of Fed. Reserve System,* 736 F.2d 468, 477 (8th Cir.1984); *First Nat'l Bank of Lamarque v. Smith,* 610 F.2d 1258, 1261 n. 6 (5th Cir.1980).

While the Supreme Court made a number of references to section 92 in *Commissioner v. First Security Bank of Utah, N.A.,* 405 U.S. 394, 92 S.Ct. 1085, 31 L.Ed.2d 318 (1972), its decision did not depend on the statute's continued vitality. That case concerned section 482 of the Internal Revenue

Act ("IRA"), which, for tax purposes, allows the Commissioner to reallocate income among companies that are under common ownership or control. *See* 26 U.S.C. § 482 (1988). Two national banks, presumably located in communities having in excess of five thousand inhabitants, referred borrowers electing to purchase credit life insurance to an independent insurance company that, in turn, would reinsure the policies with an insurance subsidiary of the holding company that owned the banks. The banks generating the credit life insurance received no compensation for their services; in fact, they had been advised by counsel that it would be unlawful for them to receive any income as a result of their customers' purchase of the insurance. 405 U.S. at 397, 92 S.Ct. at 1088. Nevertheless, the Commissioner of Internal Revenue used his authority under section 482 of the IRA to reallocate forty percent of the insurance subsidiary's premium income to the banks as compensation for originating the credit.

The Supreme Court described the question before it as "whether there was a shifting or distorting of the Banks' true net income resulting from the receipt and retention by [the insurance subsidiary] of the premiums above described." *Id.* at 400–01, 92 S.Ct. at 1089–90. The Court noted that

> the Banks could never have received a share of these premiums. National banks are authorized to act as insurance agents when located in places having a population not exceeding 5,000 inhabitants, 12 U.S.C.A. § 92.12 [12]

[12] Section 92 of the National Bank Act was enacted in 1916. When the statutes were revised in 1918 and re-enacted, § 92 was omitted. The revisers of the United States Code have omitted it from recent editions of the Code. However, the Comptroller of the Currency considers § 92 to be effective and he still incorporates the provision in his Regulations, 12 CFR §§ 2.1–2.5 (1971).

*Id.* at 400 and n. 12, 92 S.Ct. at 1090 & n. 12. The Court then observed:

> Although § 92 does not explicitly prohibit banks in places with a population of over 5,000 from acting as insurance agents, courts have held that it does so by implication.

The Comptroller of the Currency has acquiesced in this holding, and the Court of Appeals for the Tenth Circuit expressed its agreement in the opinion below.

\* \* \* \* \* \*

> [The Commissioner] does not contest this finding by the Tax Court or the holding in this respect of the Court of Appeals below. *Accordingly, we assume for purposes of this decision* that the Banks were prohibited from receiving insurance-related income. . . .

*Id.* at 401–02, 92 S.Ct. at 1090–91 (emphasis added) (footnotes omitted).

*Based on this assumption,* the Court concluded that because the banks did not in fact receive any premium income, and because they would have been precluded from receiving such income whether or not they were under common control with the insurance subsidiary, "the premium income received by [the insurance subsidiary] could not be attributable to the Banks"; the "Commissioner's exercise of his § 482 authority was therefore unwarranted." *Id.* at 407, 92 S.Ct. at 1093.

While it is true, as Justice Blackmun noted in dissent, that the Court had placed "repetitive emphasis on the missing § 92," *id.* at 419, 92 S.Ct. at 1099, its reliance was based on an explicit assumption that the statute prohibited insurance sales by a national bank located in a community with a population of more than five thousand. This assumption as to the application, we believe, extended to the validity of the section. Although the Court had earlier referred to section 92 as authorizing national banks to act as insurance agents in places having no more than five thousand inhabitants, *id.* at 401, 92 S.Ct. at 1090, that reference was qualified by footnote 12, which called attention to section 92's omission from recent editions of the United States Code.

Thus, the Supreme Court never directly addressed the question before us today. A determination of the validity of section 92 was not necessary to its decision in *First Security Bank;* and while the footnote observed that the Comptroller still considered

the section to be effective, this does not indicate that the Court adopted such a view.

### III. CONCLUSION

We acknowledge that the parties' analysis of the 1916 amendments is plausible, and that the placement of section 92 in section 5202 of the Revised Statutes might well have been a mistake. Their claim that we must therefore find section 92 valid, however, runs up against the stubborn fact that the troublesome quotation marks are located where they are, not where the parties argue that the 64th Congress intended them to be. Like it or not, they are an integral part of the bill that the President signed into law and that was enrolled in the Statutes at Large. In adopting section 20 of the 1918 Act, the 65th Congress amended section 5202 as it appeared in those Statutes; and as the parties have failed to point to any concrete evidence to the contrary, we must conclude that Congress intended the consequences of its actions, and that section 92 has ceased to exist.

Moreover, even if we were persuaded that its repeal was in fact the result of cumulative mistakes by both Congresses (the misplacement of quotation marks in 1916 and the failure to take corrective action in 1918), we would still be hesitant to move into the breach. We recognize that, in order to give effect to a clear congressional intent, federal courts have assumed a rather broad responsibility for correcting flaws in the language and punctuation of federal statutes. There is a point, however, beyond which a court cannot go without trespassing on the exclusive prerogatives of the legislative branch.

We believe we are at that point. It is one thing for a court to bend statutory language to make it achieve a clearly stated congressional purpose; it is quite another for a court to reinstate a law that, intentionally or unintentionally, Congress has stricken from the statute books. If the deletion of section 92 was a mistake, it is one for Congress to correct, not the courts.

As section 24 of the National Bank Act limits a national bank's activities to those authorized by law, and as the Comptroller cites no authority other than that section for its challenged ruling, we find that ruling not in accordance with law. We therefore reverse and remand the case to the district court with instructions to enter judgment for appellants.

*So ordered.*

### APPENDIX A

Section 13 of Federal Reserve Act of 1913

#### POWERS OF FEDERAL RESERVE BANKS.

Sec. 13. Any Federal reserve bank may receive....

\* \* \* \* \* \*

Any member bank may accept drafts or bills of exchange drawn upon it and growing out of transactions involving the importation or exportation of goods having not more than six months sight to run; but no bank shall accept such bills to an amount equal at any time in the aggregate to more than one-half its paid-up capital stock and surplus.

Section fifty-two hundred and two of the Revised Statutes of the United States is hereby amended so as to read as follows: No national banking association shall at any time be indebted, or in any way liable, to an amount exceeding the amount of its capital stock at such time actually paid in and remaining undiminished by losses or otherwise, except on account of demands of the nature following:

First. Notes of circulation.

Second. Moneys deposited with or collected by the association.

Third. Bills of exchange or drafts drawn against money actually on deposit to the credit of the association, or due thereto.

Fourth. Liabilities to the stockholders of the association for dividends and reserve profits.

Fifth. Liabilities incurred under the provisions of the Federal Reserve Act.

The rediscount by any Federal reserve bank of any bills receivable and of do-

mestic and foreign bills of exchange, and of acceptances authorized by this Act, shall be subject to such restrictions, limitations, and regulations as may be imposed by the Federal Reserve Board.

## APPENDIX B

### 1916 Amendments to Federal Reserve Act of 1913

CHAP. 461.—An Act To amend certain sections of the Act entitled "Federal Reserve Act," approved December twenty-third, nineteen hundred and thirteen.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Act entitled "Federal reserve Act," approved December twenty-third, nineteen hundred and thirteen, be, and is hereby, amended as follows:

\*　　\*　　\*　　\*　　\*　　\*

That section thirteen be, and is hereby amended to read as follows:

\*　　\*　　\*　　\*　　\*　　\*

"Any Federal reserve bank may make advances to its member banks on their promissory notes for a period not exceeding fifteen days at rates to be established by such Federal reserve banks, subject to the review and determination of the Federal Reserve Board, provided such promissory notes are secured by such notes, drafts, bills of exchange, or bankers' acceptances as are eligible for rediscount or for purchase by Federal reserve banks under the provisions of this Act, or by the deposit or pledge of bonds or notes of the United States." [1]

Section fifty-two hundred and two of the Revised Statutes of the United States is hereby amended so as to read as follows: "No national banking association shall at any time be indebted, or in any way liable, to an amount exceeding the amount of its capital stock at such time actually paid in and remaining undiminished by losses or otherwise, except on account of demands of the nature following: [2]

"First.　Notes　of　circulation.

"Second.　Moneys deposited with or collected by the association.

"Third.　Bills of exchange or drafts drawn against money actually on deposit to the credit of the association,　or　due　thereto.

"Fourth.　Liabilities to the stockholders of the association for dividends　and　reserve　profits.

"Fifth.　Liabilities incurred under the provisions of the Federal Reserve Act.

"The discount and rediscount and the purchase and sale by any Federal reserve bank of any bills receivable and of domestic and foreign bills of exchange, and of acceptances authorized by this Act, shall be subject to such restrictions, limitations, and regulations as may be imposed by the Federal Reserve Board. [3]

"That in addition to the powers now vested by law in national banking associations organized under the laws of the United States any such association located and doing business in any place the population of which does not exceed five thousand inhabitants, as shown by the last preceding decennial census, may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, act as the agent for any fire, life, or other insurance company authorized by the authorities of the State in which said bank is located to do business in said State, by soliciting and selling insurance and collecting premiums on policies issued by such company; ... *Provided* [sic], *however,* That no such bank shall in any case guarantee ... the payment of any premium on insurance policies issued through its agency by its principal: *And provided further,* That the bank shall not guarantee the truth of any statement made by an assured in filing his application for insurance. [4] [§ 92]

"Any member bank may accept drafts or bills of exchange drawn upon it ... *Provided further,* That no member bank shall accept such drafts or bills in an amount exceeding at any time the aggregate of one-half of its paid-up and unimpaired　capital　and　surplus." [5]

## APPENDIX C

### Section 20 of the War Finance Corporation Act of 1918

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

### TITLE I.—WAR FINANCE CORPORATION.

\*　　\*　　\*　　\*　　\*　　\*

Sec. 20. Section fifty-two hundred and two of the Revised Statutes of the United States is hereby amended so as to read as follows:

"Sec. 5202. No national banking association shall at any time be indebted, or in any way liable, to an amount exceeding the amount of its capital stock at such time actually paid in and remaining undiminished by losses or otherwise, except on account of demands of the nature following:

"First. Notes of circulation.

"Second. Moneys deposited with or collected by the association.

"Third. Bills of exchange or drafts drawn against money actually on deposit to the credit of the association, or due thereto.

"Fourth. Liabilities to the stockholders of the association or dividends and reserve profits.

"Fifth. Liabilities incurred under the provisions of the Federal Reserve Act.

"Sixth. Liabilities incurred under the provisions of the War Finance Corporation Act."

SILBERMAN, Circuit Judge, dissenting:

My position might be thought counterintuitive, but I would decide the case, as did the district court, without reaching the question the majority thinks is a necessary antecedent: whether section 92 is still good law. Appellants did not challenge the validity of section 92. Indeed, after the court ordered the parties to address the issue at oral argument and appellees filed supplemental materials supporting the conclusion that the statute was not repealed, counsel for appellants forthrightly said:

It would quite obviously be to the appellants' advantage if section 92 were no longer in existence, since there would be no statutory basis for the Comptroller's order. We have researched the issue, both earlier and in light of the court's questions, and we have carefully reviewed the submission made by the government.... Given that the statutory issue involves a controversy over the use of punctuation, that Congress obviously intended to amend the law in 1982, and that the Supreme Court has in fact described the law as in effect, while noting its curious history, we have concluded that we cannot advance a substantial argument that section 92 no longer exists.

To be sure, when five months later the panel, having not decided the case, directed the parties to brief the issue, appellants—no doubt at that point realizing that their chances for success were dependent upon indulging the court—did so and partially switched their position, urging us to decide whether section 92 exists. But in answer to our question "whether this court should decide the validity of 12 U.S.C. § 92 in the absence of a challenge to its validity," appellants could only suggest that the question might be jurisdictional—that if section 92 actually had been repealed in 1918, the case might be "moot" or perhaps might "not even arise." I do not think there is very much to either argument[1] (nor, apparently, does the majority), but I agree with appellants' implicit premise: that unless we

---

**1.** Although the repeal of a statute moots controversies over the law's validity, *see, e.g., Burke v. Barnes,* 479 U.S. 361, 363–64, 107 S.Ct. 734, 736–37, 93 L.Ed.2d 732 (1987), here the parties *agree* that section 92 is valid, and they have a continuing controversy over the Comptroller's authority to permit national banks to sell insurance nationwide. And the case obviously arises under federal law for purposes of 28 U.S.C. § 1331, because, *inter alia,* the parties have stated a cause of action under the Administrative Procedure Act, 5 U.S.C. §§ 701–06. *See Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 230 n. 4, 106 S.Ct. 2860, 2866 n. 4, 92 L.Ed.2d 166 (1986); *Robbins v. Reagan,* 780 F.2d 37, 42 (D.C.Cir.1985) (per curiam).

determine the validity question to be jurisdictional, we should not decide it.

My colleagues take a different position. Driven by the perceived duty to inquire, on their own, into section 92's validity, they decide the issue. With all due respect, I think the majority is quite wrong in its perception of our judicial obligation. We owe no abstract duty to Congress (or the President) to enforce or not to enforce laws; all of our power derives from our constitutional duty to decide cases and controversies. The issue of section 92's validity was decidedly not part of the "case or controversy" as it was brought to the district court or on appeal to us. It is quite fair to say that we have added it to the case; we have created a controversy that did not exist. That 1 U.S.C. § 204(a) states that "matter set forth" in the Code "establish[es] prima facie the laws of the United States" hardly suggests any independent duty on the part of the judiciary to inquire whether matters not appearing in the Code, but which the parties agree continue to be law, remain valid.[2]

I do not think my view has ever been stated better than in the passage the majority quotes from *Carducci v. Regan,* 714 F.2d 171 (D.C.Cir.1983), written by then-Judge Scalia:

> The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.

*Id.* at 177. The majority, however, trumps Judge Scalia in *Carducci* with Justice Scalia in *Arcadia, Ohio v. Ohio Power Co.,* — U.S. —, 111 S.Ct. 415, 112 L.Ed.2d 374 (1990). There the Supreme Court decided that a statute, whose exact application was in dispute, did not even apply to a particular transaction, *see id.* 111 S.Ct. at 418, 422, notwithstanding that no party had even suggested such an argument in the

Supreme Court or the court of appeals. Justice Scalia, writing for the Court, did not, however, make clear that the statutory construction adopted by the Court was not argued by the parties at any stage (Justice Stevens pointed it out in his concurring opinion, *see id.* 111 S.Ct. at 422–23). So, importantly, the Court never explained or justified what it did. I do not think that under these circumstances the Court meant to establish a precedent on the point.[3] As in the area of standing, I think we should follow only what the Court says it does, not merely what it does. *Cf. Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 119, 104 S.Ct. 900, 918, 79 L.Ed.2d 67 (1984) (court addressing a jurisdictional issue is not bound by prior decisions that passed on the question *sub silentio*); *Haitian Refugee Center v. Gracey,* 809 F.2d 794, 800 (D.C.Cir.1987) (prior decision that reached merits without discussing standing did not constitute precedent on standing).

The next year in *Kamen v. Kemper Financial Services, Inc.,* — U.S. —, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), the Court, relying on *Ohio Power,* said that "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Id.* 111 S.Ct. at 1718. Of course, that statement in a sense begs the question, because the hard analysis comes in determining when an issue or claim is properly before the court. In *Kamen,* the petitioner had brought a shareholder derivative action under the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 to 80a–64, without making a demand for relief upon the board of directors, effectively asserting her right to do so under federal common law. She did not advert to state law until her reply brief in the court of appeals, and thus that court,

---

**2.** I do not think the majority is even correct in using the term "presumption," but our "duty" is not affected in any event.

**3.** Perhaps because the Court did not wish to set forth a justifying principle that extended beyond that case. The Supreme Court, I gather, weighs

docket management factors that the lower federal courts do not encounter. If the Court wants us to adopt a more relaxed stance than I think appropriate, this case may well offer a suitable vehicle to so instruct us.

in shaping a federal common law rule, refused to consider state law. The Supreme Court reversed, holding that the court of appeals could and should look to state law to fashion the contours of the federal law that governed. *See Kamen*, 111 S.Ct. at 1718. In other words, the petitioner in *Kamen* did assert a right not to make a demand under federal law, and the case was decided on that basis; the Supreme Court only thought that the court of appeals should have looked to state law for guidance. That does not seem to me much different than a court relying on a case not cited by the parties to support a contested proposition. And the Court continued: "We do not mean to suggest that a court of appeals should not treat an unasserted claim as waived...." *Id.* 111 S.Ct. at 1718 n. 5. This is that very case where the unasserted claim (that Congress repealed section 92 and therefore the Comptroller's actions under it were unlawful) was waived; it was, in fact, carefully, deliberately, and thoughtfully waived.

The majority's reliance on *Town of South Ottawa v. Perkins*, 94 U.S. 260, 24 L.Ed. 154 (1876), is equally misplaced, because the issue of the statute's validity in that case was raised by the litigants. *See id.* 94 U.S. at 262, 266. Similarly, although the "stipulation of law" cases also cited by the majority establish courts' power to reach nonjurisdictional issues not raised by the parties, they do not suggest that it is always appropriate for courts to do so.

More in point, it seems to me, is *McCormick v. United States*, —— U.S. ——, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991). In that case the Supreme Court refused to consider an appellant's argument, made for the first time in his brief to that Court, that Congress did not intend the anti-extortion Hobbs Act, 18 U.S.C. § 1951, to apply to campaign contributions. *See McCormick*, 111 S.Ct. at 1814 n. 6. Because he concluded that the statute did not apply, Justice Scalia in a concurring opinion said, "I think it well to bear in mind that the statute may not exist." *Id.* at 1820. But he made quite

clear that he would not decide the case on that ground. *See id.* The approach taken in *McCormick* accords with other decisions in which courts have declined to consider nonjurisdictional issues not raised by the parties. *See, e.g., Spaulding v. University of Washington*, 740 F.2d 686, 694 n. 2 (9th Cir.) (declining to decide, in a pre-*Garcia* case involving a charge of discrimination under the Equal Pay Act, 29 U.S.C. § 206(d)(1), whether the Act might be unenforceable against the university, a conceded state agency, "[b]ecause the parties neither raise the issue nor contend that it affects our jurisdiction"), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984).

As acknowledged by the *McCormick* majority, *see McCormick*, 111 S.Ct. at 1814 n. 6, some courts recognize an exception to the general principle of judicial restraint that I assert. The "plain error" doctrine is occasionally applied in the civil as well as the criminal context to decide issues not raised by the parties where manifest injustice might otherwise result. *See, e.g., Anderson v. Group Hospitalization, Inc.*, 820 F.2d 465, 469 n. 1 (D.C.Cir.1987) (discussing civil cases invoking the plain error rule in exceptional circumstances where error is obvious and grave); *see also Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (appellate court is justified in resolving issue not raised below if "the proper resolution is beyond any doubt" or "'injustice might otherwise result'" (quoting *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941))). But I think that avenue is hardly open to us here, since—as appellants pointed out in their post-argument brief—for over seventy years the Comptroller, Congress, federal courts, and even the Supreme Court, *see Commissioner of Internal Revenue v. First Security Bank*, 405 U.S. 394, 400 n. 12, 92 S.Ct. 1085, 1090 n. 12, 31 L.Ed.2d 318 (1972), have assumed that the statute remains in effect.[4] (It actually appears in the United

---

4. *See* Maj.Op. at 737–39. Although I agree that subsequent assumptions by the executive, legislative, and judicial branches cannot establish

Congress' intent in 1918, I do think that such widespread acceptance of section 92's existence precludes us from reaching a different conclu-

States Code Service. *See* 12 U.S.C.S. § 92.) Injustice is more likely to result from our reaching the issue than from our declining to do so, because the question of section 92's validity affects many entities, including members of the insurance and banking industries who have relied on the law's continued existence and who, having no notice that the question might be decided, had no opportunity to make their views known in this case. I would therefore affirm the district court on the ground that the Comptroller's ruling is a reasonable interpretation of section 92, and note that we do not decide the significance of Congress' actions in 1918.

sion in the absence of a challenge by one of the parties.